Charley Joseph **HOLLOWAY**, Defendant-Appellant,

v.

**UNITED STATES** of America, Plaintiff-Appellee.

No. 73–1693.

United States Court of Appeals, Tenth Circuit.

April 24, 1974.

Rehearing Denied May 21, 1974.

**836**

D. Craig Lewis of Pendleton, Sabian, Guthery & Lewis, P. C., Denver, Colo., for defendant-appellant.

Robert D. McDonald, Asst. U. S. Atty. (Richard A. Pyle, U. S. Atty., with him on the brief), for plaintiff-appellee.

Before HILL, Circuit Judge, DURFEE,* Senior Judge, and DOYLE, Circuit Judge.

DURFEE, Senior Judge.

Appellant, Charley Joseph Holloway, was convicted after a jury trial in the United States District Court for the Eastern District of Oklahoma of violation of 26 U.S.C. §§ 5601(a)(1), 5601(a)(4), 5601(a)(7), and 5686(a), relating to the illegal possession and operation of distilling apparatus. Holloway appeals contending that he was entitled to suppression of allegedly incriminatory statements made by him after his arrest to special agents of the Treasury Department; he also challenges the sufficiency of the evidence upon which his conviction rests.

The facts are as follows:

On March 14, 1973, appellant was arrested by special agents of the Bureau of Alcohol, Tobacco and Firearms in the vicinity of an illegal, operating still located near Boley, Oklahoma, approximately three-quarters of a mile from appellant's residence. No one else was seen in the area of the still at that time. One of the agents read to Holloway a statement of his constitutional rights, as prescribed by Miranda v. State of Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). Holloway indicated that he understood his rights, and when asked if he wanted to make any statement concerning the still at that time he indicated that he did not.

Two of the agents transported appellant to Okemah, Oklahoma to place him in the county jail there while they returned to the site of the still to conduct an inventory and to destroy the still. Although the county jailer was instructed by one of the agents to permit Holloway to make a phone call if he wished, Holloway did not request to call an at-

---

* Honorable James R. Durfee, Senior Judge, United States Court of Claims, sitting by designation.

torney while in the county jail. After destruction of the still, which took approximately two hours, the agents returned to Okemah and again took custody of Holloway. They drove appellant to the Federal jail in Muskogee, Oklahoma, with a stopover in Henryetta, Oklahoma. It was during that automobile trip that Holloway made the inculpatory statements in issue, approximately three to four hours after his arrest and advisement of rights.

Prior to trial Holloway filed a motion for suppression of the statements at issue herein. A hearing was held on that motion on April 27, 1973, and the trial court entered an order on that date denying the motion. The agents subsequently testified at trial as to statements made by Holloway which constitute or amount to a confession on his part that the still belonged to him, that he was operating it, and that he had set up the mash and had previously run off some whiskey. Holloway testified that he "just went along with the general conversation" and responded to the questions of the agents, but he denied that he made any statements to the agents to the effect that the still belonged to him or that he had gone to the still site for the purpose of running any whiskey.

Appellant acknowledges that the Miranda warnings were read to him when he was arrested, and he testified that he understood what his rights were. He contends, however, that the trial court erred in admitting testimony as to the conversation between himself and the agents because the Government failed to sustain its "heavy burden" of proving that appellant made a voluntary, knowing and intelligent waiver of his rights.

■ Miranda recognized that the Fifth Amendment privilege against self-incrimination and the Sixth Amendment right to retained or appointed counsel are waivable. 384 U.S. at 444, 86 S.Ct. at 1612, 16 L.Ed.2d at 707 (1966). Once it has been determined that the warnings required by Miranda have been administered, the particular facts and circumstances of the case must be examined to determine whether the accused has voluntarily, knowingly and intelligently waived effectuation of his rights. *See e. g.*, United States v. Tafoya, 459 F.2d 424 (10th Cir. 1972); United States v. Speaks, 453 F.2d 966 (1st Cir. 1972); Klingler v. United States, 409 F.2d 299 (8th Cir. 1969), cert. denied, 396 U.S. 859, 90 S.Ct. 127, 24 L.Ed.2d 110 (1969). It is our conclusion, based upon the facts and circumstances in the record before us, that appellant "voluntarily, knowingly and intelligently" waived his privilege against self-incrimination and his right to the presence of counsel.

Statements made by Holloway were made in the context of what he termed "general conversation" and what the agents termed "normal conversation." Appellant's willingness to discuss the still and its operation is evidenced by his own testimony, in which he related particular segments of the conversation between himself and the agents. At the hearing on the motion to suppress statements allegedly made by him, appellant testified as follows:

Q. What was the nature of the conversation on the trip back to Muskogee?

A. Well, the conversation between Okemah and Henryetta was based mostly on the amount of whiskey run and whatnot. When Agent Tilley and I were sitting in the rear of the car, he was sitting on the left side and I was on the right side, and when we drove along Interstate 40 I asked Mr. Tilley, I said, 'Well, buddy, how much did you run?"

He said, "Well, Charley, I run approximately five and shut her down."

I said, "What did you do with the whiskey?"

He said, "I tasted it, it was good whiskey. I would have jarred it up for you and I couldn't find your jars and I poured it out."

I said, "That's a shame."

Holloway also testified at the hearing on the motion to suppress about his conversation with Agent Day:

A. There wasn't any conversation based on mash between Okemah and Henryetta. Now, after Mr. Day let Agent Tilley and Agent King out of the car in Henryetta he and I proceeded up Interstate 40 to Checotah. Somewhere between Henryetta and Checotah Mr. Day asked me, "Charley, how many gallons of whiskey did you run down there?"

I said, "Well, James, I haven't run the first gallon."

I said, "Your agent sitting back there with me said he run approximately five."

Then he said, "Approximately how long have you had that still setting there?

I said, "From all the evidence, that still has been there about three and a half months."

Then he asked me, "Weren't you a little sceptical about having a still that close to a dump ground?"

Then I said, "Did you look the terrain over?"

And he said, "Yeah. So far as I was concerned that is the safest place in the world to have a still."

I said, "I wouldn't be afraid to sit there and run whiskey and watch people dump trash over there in that dump ground."

Any statements of an incriminatory nature made by appellant were properly admitted into evidence because appellant deliberately and voluntarily chose to discuss with the agents matters concerning the still and its operation, after having been fully advised of his rights. Appellant argues that he claimed the right to remain silent at the arrest site by indicating his desire not to make any statements to the agents, thereby rendering any subsequent interrogation by the agents constitutionally improper. It is true, generally, that when in the absence of counsel an accused indicates that he desires to remain silent, all interrogation must cease. Miranda v. State of Arizona, *supra*, 384 U. S. at 474, 86 S.Ct. at 1628, 16 L.Ed.2d at 723 (1966). However, any prior claim of the Fifth Amendment privilege which was made at the arrest site was subsequently waived by appellant's inquiries to the agents concerning the still and its operation and by his willingness to discuss these matters freely and openly. This is not the situation where officials persisted in impermissible "interrogation" after an accused invoked his constitutional rights. Indeed, the admissions made by appellant were not the consequence of a formal and controlled interrogation in its classic sense. The agents did ask Holloway questions, but Holloway's own testimony indicates that he initiated the discussion about the still and its operation with Agent Tilley by inquiring how much whiskey the agents had run, and what they had done with it. Furthermore, one of the agents testified that appellant wanted to know who had "snitched him off," that is, who had told on him. When an accused, having been fully advised of his rights, actively seeks to speak with officials about matters under criminal investigation, statements made which amount to a confession are not excludible as having been received in violation of the accused's constitutional rights. *See* United States v. Tafoya, 459 F.2d 424, 427 (10th Cir. 1972).

Statements made by appellant to the agents were not "the product of compulsion, subtle or otherwise." Miranda v. State of Arizona, *supra*, 384 U.S. at 474, 86 S.Ct. at 1628, 16 L.Ed.2d at 723 (1966). Appellant makes no claim of compulsion in the sense of physical abuse, threats, harassment, hunger, lack of sleep or mental deficiency, or lengthy interrogation. There is no showing that the agents tricked or cajoled appellant into making admissions, nor did they employ any techniques of persuasion or

inducement. There is no evidence that the agents pressed an interrogation upon the accused against his wishes. At no time did appellant refuse to respond to the questions of the agents, nor did he indicate in any way that he wished to invoke his privilege of remaining silent by terminating the conversation. The record clearly supports the conclusion that appellant waived his privilege against self-incrimination, and that he did so voluntarily, knowingly and intelligently.

The fact that counsel was not present at the time Holloway made statements amounting to a confession does not *ipso facto* render those statements inadmissible. *See* Butterwood v. United States, 365 F.2d 380, 383 (10th Cir. 1966). Indeed, the Miranda decision recognizes that the Sixth Amendment right to the presence of counsel is waivable, provided that the waiver is made "voluntarily, knowingly and intelligently." 384 U.S. at 444, 86 S.Ct. at 1612, 16 L.Ed.2d at 707 (1966). This court has refused to read Miranda as holding that " 'an express declination of the right to counsel is an absolute from which, and only from which, a valid waiver can flow'." Bond v. United States, 397 F.2d 162, 165 (10th Cir. 1968).[1] The facts and circumstances here establish that appellant made a voluntary and knowing waiver of his Sixth Amendment right to the presence of counsel during his conversation with the agents about the still and its operation.

There is a dispute between the parties as to what Holloway actually said during the course of his conversation with the agents, and as to whether or not he made any admissions or inculpatory statements at all. The testimony of the agents and of appellant was contradictory in this regard. The trial judge allowed these factual issues to go to the jury for consideration, and the jury chose to believe the testimony of the agents. Inherent in the verdict is the jury finding that appellant made statements which constitute a confession, and

that he made them freely and voluntarily. We accept these findings.

Finally, appellant contends that the evidence was insufficient to sustain a guilty verdict. Viewing the evidence in a light most favorable to the Government, as we must, United States v. Mecham, 422 F.2d 838 (10th Cir. 1970), we believe that there is ample evidence to support appellant's conviction on each of the four counts in the indictment.

Affirmed.

---

1. Quoting Sullins v. United States, 389 F.2d 985, 989 (10th Cir. 1968), opinion of Judge Lewis concurring and dissenting.