STATE OF NORTH CAROLINA v. GREGORY LAMAR JOHNSON

No. 107

(Filed 24 January 1978)

1. **Criminal Law § 73.4— spontaneous utterance—admissibility**

     In a prosecution for first degree murder, the trial court did not err in admitting into evidence deceased's spontaneous statement to a witness who questioned him that he had been shot by "Greg," since only thirty-five seconds elapsed between the witness's hearing of the shots and deceased's statement; deceased's wounds were severe and he rapidly lost consciousness; and the witness's questioning of deceased as to who shot him did not negate the spontaneity of deceased's statement.

2. **Homicide § 15— hearsay statement attributed to three-year-old child—admission harmless error**

     Error in admitting a hearsay statement attributed to a three-year-old child identifying defendant as deceased's assailant was not prejudicial in light of other evidence which tended to show that defendant and deceased had

State v. Johnson

fought on two or three occasions, including the night before the shooting; the deceased, in his last conscious moment, identified "Greg" as his assailant; shortly after the incident, defendant telephoned deceased's girl friend and asked if he had hurt the three-year-old child in question; during this phone conversation, defendant said that he did not care if deceased died because he had plenty of alibis; and defendant left town three or four days after the shooting and had to be extradited from New York over three years later.

**3. Homicide § 21.5— first degree murder—intentional use of deadly weapon—sufficiency of evidence**

In a prosecution for first degree murder where the evidence tended to show that only three shots were fired, three wounds were found in deceased's body, and the third shot was fired after the deceased had backed away from the car carrying defendant, put down the child he was holding, and turned to walk away, there was ample evidence from which the jury could conclude that the use of the deadly weapon was intentional.

**4. Homicide § 21.5— first degree murder—premeditation and deliberation—sufficiency of evidence**

Evidence was sufficient to permit the jury to infer that defendant, after premeditation and deliberation, formed a fixed purpose to kill the deceased and subsequently carried out that purpose where the evidence tended to show that, while defendant and deceased had fought the night before, at the time of the shooting deceased was standing in a place where he had a right to be and offered no provocation for defendant's acts; defendant later said that he did not care if deceased died because he had plenty of alibis; although the deceased had not been felled, he was shot once by defendant after he had retreated from the side of defendant's car and apparently was trying to walk away; and deceased was shot twice while he was defenseless, holding a small child in his arms.

**5. Criminal Law § 112.4— circumstantial evidence—charge on degree of proof**

A general and correct charge as to the intensity or quantum of proof when the State relies wholly or partly on circumstantial evidence is adequate unless the defendant tenders request for a charge on the intensity of proof required for such evidence.

DEFENDANT appeals from a conviction of first degree murder and sentence of life imprisonment, *Howell, J.*, 9 May 1977 Session, MECKLENBURG Superior Court.

The evidence for the State tended to show that:

On 8 July 1973, the deceased, William Mobley, left the apartment of his girlfriend, Teresa Hall, in Charlotte sometime after 8:00 p.m. on his way to catch a bus. As he walked down the sidewalk, he picked up JoAnn Smith, three-year-old daughter of Teresa's aunt, and carried her to a vending truck which sold can-

dy in the nearby parking lot. A car pulled around the truck and stopped. As the deceased left the truck, someone called him to the car and, still carrying the child, he went over and leaned into it. At this point he was shot twice, whereupon he backed away from the car, let the child down and apparently started back toward the apartment. He was then shot again.

Jerome Smith, Teresa's cousin, heard the shots and went to aid the deceased, reaching him within seconds after the shooting. The deceased pulled up his shirt, showed Jerome a bullet wound in his chest and asked for help. Jerome asked Mobley who shot him and he replied "Greg" and collapsed. Police and an ambulance were summoned and Mobley was taken to a hospital where he was pronounced dead at 9:00 p.m.

Soon after the shooting defendant telephoned Teresa Hall's apartment and talked with Jerome Smith while Teresa listened on an extension. During this conversation defendant asked if the child was hurt and said he did not care if Mobley died because he had plenty of alibis. Defendant left Charlotte shortly after this incident. He was subsequently extradited from New York in late 1976.

Teresa Hall had at one time lived with defendant, but their relationship had terminated the month before the shooting. Mobley and defendant had fought two or three times, once on the night just prior to the killing.

Defendant's evidence tended to show that he was elsewhere at the time the deceased was shot.

Other facts pertinent to the decision are discussed in the opinion.

*Attorney General Rufus L. Edmisten by Associate Attorney J. Chris Prather for the State.*

*William F. Burns, Jr., for defendant-appellant.*

COPELAND, Justice.

Defendant presents seven assignments of error, only four of which are discussed below. It is our conclusion that all these assignments are without merit.

[1]  Defendant argues that the trial court erred in admitting into evidence the deceased's hearsay statement to the witness Jerome Smith that he had been shot by "Greg." Statements are admissible as spontaneous utterances, however, when made by a participant or bystander in response to a startling or unusual incident, without opportunity to reflect or fabricate. *State v. Bowden*, 290 N.C. 702, 228 S.E. 2d 414 (1976). "[S]uch statements derive their reliability from their spontaneity when (1) there has been no sufficient opportunity to plan false or misleading statements, (2) they are impressions of immediate events and (3) they are uttered while the mind is under the influence of the activity of the surroundings." *State v. Deck*, 285 N.C. 209, 214, 203 S.E. 2d 830, 833-834 (1974).

In the instant case, only thirty-five seconds passed between the witness Smith's hearing of the shots and the deceased's statement that "Greg" had shot him. Defendant maintains that this was sufficient time for fabrication and that the deceased's statement was not spontaneous because it was made in response to the question "Who shot you?" asked by the witness Smith. There was evidence, however, that the deceased (1) began to stagger almost immediately after being shot and was completely unable to walk within thirty seconds; (2) raised his shirt and exhibited his chest wound to Smith; and (3) lost consciousness within one minute and died within one-half hour of the shooting. In addition, an autopsy revealed that the gunshot wound in Mobley's chest passed through the lower part of his left lung and the pericardical sac around his heart. The severity of the deceased's wounds and his rapidly diminishing state of consciousness lead us to conclude that any inference of fabrication which might have arisen from the minimal time lapse between the shots and the statement by the deceased was refuted. Further, the element of spontaneity is not negated merely because a bystander's question intervened between the startling incident and the utterance. *See, State v. Deck, supra*. This assignment is without merit and overruled.

[2]  We next consider defendant's contention that the trial court committed reversible error in admitting certain hearsay statements attributed to JoAnn Smith, the three-year-old child Mobley was carrying at the time he was shot. Defendant called as a witness a police officer who had prepared a preliminary report of the shooting at the scene. On cross-examination by the State,

the officer testified that the name Gregory Johnson appeared in the report on the line marked "Identify Suspects and Charge." The witness was then asked who told him the suspect's name, to which he was allowed to answer, over objection, "JoAnn Smith told me that Greg hurt William." We agree that this statement was hearsay; however, we do not feel that it was sufficiently prejudicial to warrant a new trial. Although defendant arguably opened the door to this later testimony by inquiring on direct examination into the origin of other information in the report, it is unnecessary to resolve this question. In order to merit an award of a new trial, an appellant must show error so substantial that a different result likely would have ensued in its absence. *State v. Cross*, 284 N.C. 174, 200 S.E. 2d 27 (1973); *State v. Williams*, 275 N.C. 77, 165 S.E. 2d 481 (1969).

In the case under consideration, there was evidence which tended to show that: (1) defendant and the deceased had fought on two or three occasions, including the night before the shooting; (2) the deceased, in his last conscious moment, identified "Greg" as his assailant; (3) shortly after the incident, defendant telephoned Teresa Hall's apartment and asked if he had hurt JoAnn Smith; (4) during this telephone conversation, defendant said that he did not care if Mobley died because he had plenty of alibis; (5) defendant left Charlotte three or four days after the shooting and had to be extradited from New York over three years later. The challenged evidence consists merely of a hearsay statement attributed to a three-year-old child. In view of the quality and quantity of the other evidence against defendant, we are convinced that the result would have been the same had the statement been excluded; therefore, we find that this error was harmless and the assignment is overruled.

Defendant next assigns as error the denial of his motion for nonsuit, asserting that the State failed to put forth sufficient evidence from which the jury could find malice or premeditation and deliberation. When ruling upon a motion for judgment of nonsuit, the court must consider the evidence in the light most favorable to the State, resolving all conflicts in favor of the State and giving it the benefit of all inferences reasonably to be drawn in its favor. *State v. Chapman*, 293 N.C. 585, 238 S.E. 2d 784 (1977). Further, when the State satisfies the jury beyond a reasonable doubt that the defendant intentionally assaulted the

deceased with a deadly weapon proximately causing his death, the law raises the presumption that the killing was unlawful and done with malice. *State v. Jackson*, 284 N.C. 383, 200 S.E. 2d 596 (1973); *State v. Gordon*, 241 N.C. 356, 85 S.E. 2d 322 (1955).

[3] Defendant argues that there was insufficient evidence in the record from which the jury could find *intentional* use of the deadly weapon. Yet, the State's evidence, taken as true, would tend to show that only three shots were fired and that three wounds were found in the deceased's body. Moreover, the third shot was fired after the deceased had backed away from the car, put down the child he was holding, and turned to walk away. The accuracy with which the shots were fired and the shooting of the victim as he retreated supplied ample evidence from which the jury could conclude that the use of the deadly weapon was intentional.

[4] It is also asserted that insufficient proof of premeditation and deliberation was adduced to permit the submission of the first degree murder charge to the jury. Since it is not ordinarily possible to prove premeditation and deliberation by direct evidence, circumstantial evidence may be used to establish these elements of first degree murder. *State v. Buchanan*, 287 N.C. 408, 215 S.E. 2d 80 (1975). "Among the circumstances to be considered in determining whether a killing is done with premeditation and deliberation are: (1) Want of provocation on the part of the deceased; (2) the conduct of defendant before and after the killing; (3) the dealing of lethal blows after deceased has been felled and rendered helpless; (4) the vicious and brutal manner of the killing; (5) the number of shots fired." *State v. Davis*, 289 N.C. 500, 510, 223 S.E. 2d 296, 302-303, *death sentence vacated*, 429 U.S. 809, 50 L.Ed. 2d 69, 97 S.Ct. 47 (1976) (citations omitted).

The evidence in the instant case, viewed in the light most favorable to the State, tends to show that: (1) while defendant and the deceased had fought the night before, at the time of the shooting Mobley was standing in a place where he had a right to be and offered no provocation for defendant's acts; (2) defendant later said that he did not care if Mobley died because he had plenty of alibis; (3) although the deceased had not been felled, he was shot once by defendant after he had retreated from the side of the car and apparently was trying to walk away; and (4) Mobley was shot twice while he was defenseless, holding a small child in his arms. It is our conclusion that this evidence was sufficient to

permit the jury to reasonably infer that defendant, after premeditation and deliberation, formed a fixed purpose to kill the deceased and subsequently carried out that purpose. For the above reasons, this assignment of error also is overruled.

[5] Defendant further assigns as error the failure of the trial court to specially instruct the jury on the quantum of proof to be used in reviewing circumstantial evidence. Although defendant tendered no request for special instructions on circumstantial evidence, he argues that the court should be required to give such an instruction absent a request in cases in which the State relies totally on circumstantial evidence. We have recently held, however, that "A general and correct charge as to the intensity or quantum of proof when the State relies wholly or partly on circumstantial evidence is adequate unless the defendant tenders request for a charge on the intensity of proof required for such evidence." *State v. Beach*, 283 N.C. 261, 272, 196 S.E. 2d 214, 221-222 (1973). The trial court here gave a proper charge on the general burden of proof in criminal cases; therefore, this assignment is without merit.

The remainder of defendant's assignments of error require no discussion. We have examined them and found them to be without merit; thus, they are overruled.

After consideration of defendant's assignments of error, we conclude that he has had a fair trial and in the verdict and judgment find

No error.