STATE OF NORTH CAROLINA v. RICHARD WAYNE KING

No. 24

(Filed 7 October 1980)

1. **Criminal Law § 33.3– observation of movement of defendant's mouth – absence of prejudice**

     The trial court in a homicide case did not commit prejudicial error in admitting a witness's testimony that he didn't hear defendant say anything "but I could sort of see his mouth moving like in a low mumble but you could not understand what he was saying" since the testimony was in no way prejudicial to defendant's interests and since evidence of the same import was thereafter admitted without objection.

2. **Criminal Law § 33.4– testimony does not intimate bribery attempt**

     Testimony by a State's witness that his wife suggested to him after a court hearing that he should go and see defendant and talk to him about the shooting in question did not intimate an attempt by defendant to bribe the witness.

3. **Criminal Law § 57– testimony concerning bullet fragment – absence of prejudice**

     In this first degree murder prosecution, defendant was not prejudiced by the testimony of an S.B.I. agent who examined two bullets and a bullet fragment taken from deceased's body that the fragment was similar to the two whole bullets "in that they too are brass coated lead," particularly since the evidence showed that a whole bullet which struck deceased's heart caused his death.

4. **Criminal Law § 34.7– evidence of other crimes – competency to show intent to kill**

     In this prosecution for first degree murder, a witness's testimony that defendant scuffled with another person at a bar and grill, that defendant then went to the witness's body shop and got into an altercation with a second person, that defendant fired shots into the witness's house and his daughter's car, and that defendant then returned to the bar and grill and began the encounter with deceased which led to the fatal shooting was competent to show defendant's intent to kill, although it also tended to show defendant's commission of offenses unrelated to the one for which he was being tried.

5. **Criminal Law § 85.2– character evidence – reputation when drinking**

     The trial court erred in permitting the prosecutor to ask an officer to state defendant's "character and reputation when he is drinking" and the officer to testify that defendant's reputation is that "when he gets drunk he fights"; however, such error was harmless where the evidence of the State, aside from the officer's testimony, clearly indicated that defendant was prone to be argumentative and combative when he had been drinking alcohol.

Justice BROCK did not participate in the consideration or decision of this case.

APPEAL by defendant from judgment entered by *Long, J.*, 22 October 1979 Criminal Session, SURRY Superior Court.

Upon a plea of not guilty, defendant was tried on a bill of indictment, proper in form, charging him with the first-degree murder of Charles Eugene Martin on 2 December 1978. Evidence presented by the state tended to show:

Late in the afternoon of said date, decedent, his uncle, Charles Alvis Martin, and Ralph Hurt, went to the 601 Grill (also known as the Orange Blossom) in Crutchfield, North Carolina. Among other things the establishment had a bar at which beer was sold and several pool tables. Some 45 minutes later defendant entered the grill and began talking with Hurt. An argument developed between defendant and Hurt as to which one could whip the other. After arguing awhile, they went outside and began wrestling. Hurt wrestled defendant to the ground and sat on top of him after which defendant insisted that they stop their argument and their playing. Defendant then left the premises and was gone approximately one and one-half hours.

When defendant returned he had a cut lip. He ordered a beer after which deceased confronted him and said, "Don't be talking about the Martins, I am a Martin." As of that time defendant had consumed six or eight beers and deceased had consumed several beers. They were both "high". The bartender suggested that deceased quieten down and go outside and get some cool air. Although he had not been asked to go outside, defendant did so. After deceased had left the building, the bartender went to the door and saw defendant coming from the direction of his car with a rifle. Defendant raised the rifle and fired, after which deceased grabbed his right side and "humped" over. No weapon was found on deceased.

Before the first shot was fired, Alvis Martin went outside to check on his nephew. He saw deceased some distance away. As Alvis yelled at deceased, defendant fired a gun four times. One of the bullets struck Alvis on his ear, causing him to retreat quickly into the building.

After the shooting stopped, defendant entered his automobile, drove up to the door of the grill holding his rifle, ordered another beer and drove away without paying for it. Thereafter, deceased was found lying on the ground with one gunshot wound in his chest area and another in his back. He died within a few minutes after being shot. Eight spent .22 caliber casings were found near the body. An autopsy revealed three wounds, one in the chest area, one in his back and another in his jaw. Two bullets and the fragments of a third bullet were recovered from deceased's head and body. The bullet which entered his chest passed through his lung and struck his heart; this bullet caused his death.

Defendant presented evidence, including his own testimony, which is summarized as follows: Following the words with deceased in the bar, he went outside to his car with the intention of going home. As he reached his car, deceased came up from behind him and knocked him down. Defendant then got up and deceased knocked him down again. Thereafter, defendant managed to get into his car but deceased pulled him from the car and knocked him down a third time. As defendant got back into his car, deceased started on him again and pulled something shiny out of his pocket which looked like a knife. As deceased tried to pull him out of the car again, defendant reached into the back of the car, obtained an automatic rifle and shot deceased. Deceased staggered backward and then advanced on defendant again at which time he shot him a second time. Deceased then walked away a few steps and fell. Defendant fired several shots into the ground and drove off.

Defendant presented numerous character witnesses. Other evidence pertinent to the assignments of error will be discussed in the opinion.

The jury returned a verdict finding defendant guilty of first-degree murder. The court then conducted a sentencing hearing as provided by G.S. § 15A-2000, et seq. The jury recommended that defendant be sentenced to life imprisonment and from judgment entered in accordance with the recommendation, defendant appealed.

State v. King

*Attorney General Rufus L. Edmisten, by Assistant Attorney General Norma S. Harrell, for the state.*

*Morrow, Fraser and Reavis, by Larry G. Reavis and Alvin A. Thomas, for defendant-appellant.*

BRITT, Justice.

Defendant contends by his Exceptions 1, 2, 3, 5 and 6 that the trial court committed prejudicial error by admitting, over objection, evidence "of a highly, speculative and inflammatory nature" that was not relevant to the case. There is no merit in this contention.

[1] Defendant's first exception relates to the testimony of state's witness Clifford Speer. After the witness stated that he heard deceased tell defendant "don't be talking about the Martins, I am a Martin", the witness was asked: "What, if anything, did you see in the way of or hear in the way of coming from him?" Over objection the witness answered: "I didn't hear Mr. King say anything but I could sort of see his mouth moving like in a low mumble but you could not understand what he was saying."

Initially, we are compelled to observe that the answer was in no way prejudicial to defendant's interests. It is incumbent upon the defendant not only to show error but also to demonstrate that the error so identified was prejudicial. *E.g., State v. Paige,* 272 N.C. 417, 158 S.E. 2d 522 (1968). Furthermore, evidence of the same import was introduced at a later point in the direct examination of the witness when Mr. Speer was allowed to testify "Mr. King then said something else in a low tone of voice. I could not understand him .... " By failing to object to that later testimony, defendant waived his objection to the challenged testimony. *E.g., State v. Hampton,* 294 N.C. 242, 239 S.E. 2d 835 (1978).

[2] Defendant's second exception relates to the testimony of James D. Barker, a witness for the state. He testified on cross-examination that he had not told his wife on numerous occa-

sions that he did not know what happened outside of the building. He further testified that his wife asked him one time what happened on the occasion in question and "she thought that I ought to go and see Wayne (defendant) and talk to him about it." On redirect examination the witness testified that he did not know why his wife suggested that he go and talk with defendant. He further stated that "when they had the hearing over here, my wife was in the court sitting with Mr. King and his wife." The district attorney then asked, "And then after that she asked that you go and see Wayne." The witness answered, "Yes, after the hearing." Defendant then objected to the question and moved that the answer and the question be stricken. The court overruled the objection.

Defendant argues that the evidence to which his Exception No. 2 relates suggests an attempt by defendant, or his wife on his behalf, to bribe a state's witness. We think this is a strained interpretation of the testimony. The challenged question simply clarified the time sequence by establishing that it was after the hearing that the witness Barker's wife suggested that Barker talk to defendant about the occasion of the shooting. Furthermore, the evidence tends to show that the witness had no motive to offer anything except truthful testimony against defendant because it establishes the friendship between defendant and his wife, on the one hand, and the witness and his wife, on the other hand. Lastly, we note that defendant's objection was not made until after the question had been asked and the witness had answered. That being the case, the motion to strike was addressed to the discretion of the trial judge. *State v. Perry,* 275 N.C. 565, 169 S.E. 2d 839 (1969).

[3] Defendant's Exception No. 3 relates to the testimony of state's witness Montgomery who was an S.B.I. agent in December of 1978 and who examined the two bullets and the fragment of a bullet removed from deceased's body. The witness described the two whole bullets as having brass coating and stated that the lead fragment was also brass coated. He further stated that the fragment was not sufficient for him to determine its caliber, its manufacturer, or if it had been fired from a particular weapon. He then stated, over objection, that the fragment was similar to the two whole bullets "in that they too are brass coated lead."

We can perceive no prejudice that defendant suffered by the admission of this testimony, particularly in view of the fact that the evidence showed that the whole bullet which struck deceased's heart was the one that caused his death. Again, we apply the principle that it is incumbent upon a defendant not only to show error but to show that the error was prejudicial to him. *State v. Paige, supra.* Furthermore, defendant made no objection when the lead fragment was offered and admitted into evidence.

**[4]** Exceptions 5 and 6 pertain to the testimony of Bill Cochran who testified as a witness for the state on rebuttal. He testified that he saw defendant at the Orange Blossom on the day in question at around 5:00 p.m.; that the witness then went to his body shop in or near Boonville where he and three friends, including Gary Sizemore, took "a few drinks"; that defendant and J.T. Williams came into the shop and had a drink; that defendant and Sizemore got into an argument and the witness ordered them to leave; that when the two men went outside, defendant hit Sizemore; that the witness then got his gun and ordered defendant and Sizemore to leave; that when defendant got into his car, the witness got mad and hit him; that defendant fired several shots as he drove away and that one shot hit the witness' daughter's car, and two shots hit his house.

Defendant argues that the challenged testimony was inadmissible because it tended to show the commission of offenses which were unrelated to the one for which he was being tried; and that its only purpose was to inflame the jury. This argument is not persuasive.

While the general rule is that in a prosecution for a particular crime, the state cannot offer evidence tending to show that the accused has committed another distinct, independent, or separate offense, the rule is subject to certain exceptions. One of those exceptions is that where a specific mental intent or state is an essential element of the crime charged, evidence may be offered of such acts or declarations of the accused as tend to establish the requisite mental intent or state, even though the evidence discloses the commission of another offense by the accused. *State v. McClain,* 240 N.C. 171, 81 S.E. 2d

364 (1954); *accord, State v. Tate,* 294 N.C. 189, 239 S.E. 2d 821 (1978); *State v. Williams,* 292 N.C. 391, 233 S.E. 2d 507 (1977).

We think this testimony clearly comes within this exception. The challenged evidence tended to show that defendant scuffled with Ralph Hurt at the Orange Blossom; that he thereafter went to Cochran's place of business and got into an argument with Sizemore; that after firing shots into Cochran's house and his daughter's car, defendant returned to the Orange Blossom and began the encounter with Martin which led to the fatal shooting. All of this evidence was competent to show defendant's intent to kill, an essential element of first-degree murder. *State v. Wilson,* 280 N.C. 674, 187 S.E. 2d 22 (1972).

[5] By his Exceptions 7 and 8, defendant contends the trial court committed prejudicial error in admitting evidence of a specific character trait of defendant. These exceptions relate to the testimony of Trooper D.B. Peeler, a witness for the state, who was questioned with respect to defendant's general character and reputation in the community where he lived. Without objection, the witness answered that "it is not good". He was then asked, "What is his character and reputation when he is drinking?" Defendant objected and the court overruled the objection. The witness then answered, "His reputation when he gets drunk he fights."

The rule in North Carolina regarding evidence of character traits is well established. While a party who offers a character witness can only prove the general character of the person asked about, the witness, on his own volition, may say in what respect it is good or bad. *See generally* 1 Stansbury's North Carolina Evidence § 114 (Brandis Rev. 1973). While the trial court was in error by overruling defendant's objection, we hold that defendant has failed to establish prejudice. An error in the trial court will serve as a basis for the award of a new trial only upon a showing that the error was so substantial that a different result would likely have ensued in its absence. *State v. Johnson,* 294 N.C. 288, 239 S.E. 2d 829 (1978). As it applies to evidentiary matters, this rule holds that unless there is the reasonable possibility that the item of evidence alleged to have been erroneously admitted might have contributed to the con-

viction, its admission constitutes harmless error. *State v. Foster*, 284 N.C. 259, 200 S.E. 2d 782 (1973).

The evidence of the state, aside from the testimony of the trooper, clearly indicated that defendant was prone to be argumentative and combative when he had been drinking alcohol. The state was able to establish that on the day in question prior to the fatal shooting defendant clashed with at least three other men. During all of this time, defendant had been drinking. In view of the quantum of this type of evidence, we are unable to conclude that the testimony of the trooper was the difference between conviction and acquittal in the present case.

For the reasons stated, we conclude that defendant received a fair trial free from prejudicial error.

No error.[1]

Justice BROCK did not participate in the consideration or decision of this case.

[1]We note in passing that defendant's counsel in preparing the record on appeal violated Rule 9(b)(3) of the Rules of Appellate Procedure in that they included the court's charge to the jury when no error was assigned to the charge. Counsel's attention is called to the penalty that is authorized by Rule 9 (b)(5).