STATE OF NORTH CAROLINA v. JOHNELL PORTER and KEITH EMERSON ROSS

No. 8026SC698

(Filed 17 February 1981)

1. Criminal Law § 75.7— statements not result of custodial interrogation — Miranda warnings not required

 Where defendants were tracked by bloodhound and arrested while hiding under a bridge after a robbery, an arresting officer was asked over the police radio whether a bank bag had been found, one defendant stated that the bank bag was in the car, and the officer then asked, "What bank bag?" and such defendant replied, "The bag from the robbery," such defendant's statements were not the result of in-custody interrogation and were admissible against him although he had not been given the *Miranda* warnings since the first statement was volunteered in response to a radio message not directed to him, and the officer did not reasonably know that his question before the second statement would likely elicit an incriminating statement.

2. Criminal Law § 74.3— in-custody statements incriminating codefendant — spontaneous utterances — competency against codefendant

 Where defendant and his codefendant were tracked by bloodhound and arrested while hiding under a bridge after a robbery, an arresting officer was asked over the police radio whether a bank bag had been found, defendant stated the bank bag was in the car, and the officer then asked, "What bank bag?" and defendant replied, "The bag from the robbery," defendant's statements clearly implicated the codefendant since the only natural inference the jury could have made under the circumstances was that both defendant and the codefendant had been involved in the robbery; however, such statements constituted spontaneous utterances by defendant and were admissible against the codefendant even though defendant did not testify at the trial and the codefendant thus had no opportunity to cross-examine him.

3. Robbery § 4.6— armed robbery — guilt of both defendants — sufficiency of evidence for jury

 The State's evidence was sufficient for the jury to find that both defendants were guilty of armed robbery where it tended to show that a storekeeper was robbed at gunpoint by more than one person; the robbers fled from the scene of the robbery in a red Dodge Aspen; at least one person left the red Dodge Aspen as it was being pursued by a policeman; officers used a bloodhound to follow the trail of those leaving the red Dodge Aspen for approximately one mile until they found both defendants under a bridge; a .32 caliber revolver was found under the bridge; and one of the defendants referred to a bank bag taken in the robbery in statements made to the officers.

 Judge MARTIN (Harry C.) dissenting.

APPEAL by defendants from *Ferrell, Judge.* Judgment entered

State v. Porter

21 January 1980. Heard in the Court of Appeals 3 December 1980.

The defendants were each charged with and indicted for armed robbery. Their cases were consolidated for trial over each defendant's objection.

State's evidence showed that on 5 October 1979, Mr. Hal B. Martin, while working as a clerk at a store in Mecklenburg County, was robbed at gunpoint. During the robbery, Martin was struck on the head and rendered unconscious. When Martin regained consciousness, he saw a customer, Mr. William Lackey, lying on the floor also. Money had been taken, and some sandwich labels and cigarettes were missing.

Lackey testified that he came to the store on the dav of the
Wilson next heard his supervisor over the radio asking him if the officers had found a bank bag. When defendant Porter heard this question, he exclaimed, "The bank bag is in the car." Patrolman Wilson then asked, "What bank bag?"; and defendant Porter re-
Martin was calling the police.

Lackey described to the police over the phone the car he had seen outside the store. Mr. Joe Wilson, a patrolman for the Mecklenburg County Police Department, testified that as a result of the description and a call from the police dispatcher, he soon after began pursuit of a red Dodge Aspen. Judging by the movement he saw in the vehicle, there appeared to him to be persons in the rear of the vehicle. Patrolman Wilson testified further that after a high speed chase, he ran his vehicle into a ditch to avoid a collision with the red Dodge Aspen. He saw a person leave the Dodge and run into the woods. The Dodge then left the scene.

A bloodhound was brought to the point at which Patrolman Wilson saw a person run into the woods. County officers followed the bloodhound approximately one mile to a spot where both defendants were found under a bridge. A .32 caliber revolver was also found under the bridge. The officers held both defendants at gunpoint until they were handcuffed. Patrolman Wilson then notified the dispatcher by radio that they were holding two suspects.

plied, "The bag from the robbery."

Both defendants objected to the admission of the statements by defendant Porter referred to above, and a *voir dire* hearing was held. The court made findings of fact based on the evidence and concluded that the statements were spontaneous utterances, not in response to an in-custody interrogation, and allowed Porter's statements into evidence against both defendants.

Further evidence presented by the State showed that on 5 October 1979 Dennis Sink saw a red Dodge Aspen with three black males in it being pursued by a police vehicle. Sink saw the persons in the Aspen throw paper bags from the automobile during the pursuit. Subsequently, he picked up the bags which contained cigarettes and boxes with food labels in them.

Both defendants were convicted of armed robbery and received prison sentences from which they now appeal.

*Attorney General Edmisten, by Assistant Attorney General Ben G. Irons II, for the State.*

*Assistant Public Defender Lyle J. Yurko for defendant appellant Keith Emerson Ross.*

*Dozier, Miller & Pollard, by Scott T. Pollard, for defendant appellant Johnell Porter.*

HILL, Judge.

We first discuss the assignments of error brought forth by both defendants regarding Patrolman Wilson's testimony as to the statements made by defendant Porter immediately after the two defendants' arrest. Defendant Porter contends that as to him, the testimony should have been excluded under *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), because his statements were made before he was warned of his right to remain silent. Defendant Ross contends that as to him, the testimony should have been excluded under *Bruton v. United States,* 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968), because the extrajudicial statement of a codefendant was used against him without his having a chance to cross-examine the declarant.

The State contends Porter's statements were spontaneous utterances and were so found by the superior court judge, which

State v. Porter

finding is binding on this Court. As such, the State contends the statements were not the result of an in-custody interrogation and are admissible against defendant Porter. The State further contends Porter's statement did not implicate defendant Ross and he may not complain.

[1] We deal first with Porter's contention. It is clear from the record that defendant Porter made his statements to Patrolman Wilson before *Miranda* warnings were given and that the defendants were in custody; but, clearly, the first question coming over the radio from the supervisor was addressed to Patrolman Wilson and not to either defendant. Defendant Porter interrupted the conversation between the two officers and volunteered the location of the bank bag. A volunteered confession is admissible even in the absence of warnings or waiver of rights. *Miranda, supra.*

The issue then becomes whether the next question posed by Patrolman Wilson converts his conversation with Porter into a "custodial interrogation," thus rendering Porter's next statement inadmissible. We conclude that it does not.

Patrolman Wilson had not been at the scene of the robbery. There is no evidence that he knew what was taken at the store. Wilson only later came onto the scene when he pursued the Aspen in his car first and later pursued the defendants with the aid of the bloodhound. It was a natural response by Wilson — and, in our opinion, not to be construed as custodial interrogation — to ask in response to Porter's volunteered statement, "What bank bag?"

Porter contends that when the question was put — however innocently — the police investigation entered into the accusatory stage and that Wilson was required to tell Porter of his right to remain silent. We are not persuaded.

"A practice that the police should know is reasonably likely to evoke an incriminating response from a suspect . . . amounts to interrogation. But since the police surely cannot be held accountable for the unforeseeable results of their words or actions, the definition of interrogation can extend only to words or actions on the part of police officers that they *should have known* were reasonably likely to elicit an incriminating response." *Rhode Island v. Innis,* ____ U.S. ____ , 100 S.Ct. 1682, 64 L.Ed.2d 297, 308 (1980).

This case boils down to whether, in the brief conversation

between defendant Porter and Patrolman Wilson, the officer should have known that the respondent would suddenly be moved to make an incriminating response. We conclude not, particularly in light of *Innis's* emphasis on the brevity and "off-hand" nature of the policeman's remarks.

Although the facts are somewhat different in the case of *State v. McZorn*, 288 N.C. 417, 219 S.E.2d 201 (1975), *modified as to death penalty* 428 U.S. 904 (1976), the language of Chief Justice Sharp, on page 433, is helpful in the case *sub judice*.

> As we said in *State v. Haddock*, 281 N.C. 675, 682, 190 S.E. 2d 208, 212 (1972), '[a] voluntary in-custody statement does not become the product of an "in-custody interrogation" simply because an officer, in the course of appellant's narration, asks defendant to explain or clarify something he has already said voluntarily.' Since there is no evidence here that defendant's statements were made in response to overbearing police questioning or other police procedures designed to elicit a statement, we conclude that they were the product of free choice and without the slightest compulsion of in-custody interrogation procedures. Therefore they were properly admissible. *See Holloway v. U.S.*, 495 F. 2d 835 (10th Cir. 1974); *State v. Thomas*, 284 N.C. 212, 200 S.E. 2d 3 (1973), and cases cited therein; *State v. Blackmon*, 284 N.C. 1, 199 S.E. 2d 431 (1973).

Patrolman Wilson was still getting the big picture when he asked "What bank bag?" There was no "focus on the accused," and the officer was not motivated "to elicit a confession." Porter's assignment of error is without merit and overruled.

[2]  Next, we deal with the State's contention that defendant Porter's extrajudicial statements did not implicate defendant Ross.

Patrolman Wilson was prepared to testify that when he asked Porter "What bank bag?", Porter said, "The bag *we got* from the robbery," (Emphasis added.) This statement was edited by the trial judge on *voir dire* so that Wilson testified before the jury that Porter said, "The bag from the robbery." We do not believe this editing so sanitized the statement that it did not implicate Ross.

The two defendants were arrested after being chased by a

bloodhound for approximately one mile. Upon being caught, the two were both handcuffed. When Porter referred to a robbery, we believe the only natural inference the jury could have made at trial is that both men had been involved in the robbery.

Although we hold that the statement implicated Ross, we do not believe it necessarily follows that the statement should have been excluded as to him.

Contrary to defendant Ross's contention, the rule set forth in the *Bruton* case cited would not apply to the case *sub judice* if Porter's statements constituted spontaneous utterances. In *Bruton*, the Supreme Court overruled *Paoli v. United States*, 352 U.S. 232, 77 S.Ct. 294, 1 L.Ed.2d 278 (1957), saying that it was no longer permissible for a trial court to instruct a jury that while the confession of a defendant could be introduced as competent evidence against that defendant as an exception to the hearsay rule, that such confession could not be considered by the jury against a codefendant *because it was inadmissible hearsay* as to the codefendant. The Court held that, as a practical matter, the jury could not be expected to heed the limiting instruction and would consider against the codefendant the incriminating extrajudicial statement of the defendant, even though as to the codefendant the statement was inadmissible hearsay. The result would be a violation of codefendant's rights granted by the Confrontation Clause.

In the case *sub judice*, if defendant Porter's exclamations can be characterized as spontaneous utterances, they would not constitute inadmissible hearsay as to codefendant Ross. The *Bruton* rule would not apply. For the reasons stated above, if we find that defendant Porter's statements can be characterized as spontaneous utterances, Ross would have no constitutional rights under *Bruton* to cross-examine Porter.

We must determine whether Porter's statements were spontaneous utterances. A spontaneous utterance is a statement which is considered reliable because of its spontaneity. It is considered that if a statement is made in immediate reaction to the stimulus of an occurrence and without opportunity to reflect, it is unlikely that the statement would be fabricated. *See* 1 Stansbury's N.C. Evidence, § 164, p. 554 (Brandis rev. 1973). It does not matter that the statement is in response to a question. *See State v. Johnson*, 294 N.C. 288,291, 239 S.E.2d 829 (1978); *State v. Deck*, 285 N.C. 209,214, 203 S.E.2d 830 (1974).

In the case *sub judice*, there is evidence that both defendants had just been involved in a high speed automobile chase; they had been tracked on foot for approximately one mile by officers with a bloodhound; and they had been brought from under a bridge at gunpoint and handcuffed. At that time a voice on the radio asked Patrolman Wilson whether the officers had found a bank bag. In immediate response to the stimulus of this question, defendant Porter exclaimed that the bag was in the car. When Officer Wilson asked, "What bag?", Porter responded, "The bag from the robbery."

Defendant Porter was undergoing a traumatic experience. In the excitement of all that was surrounding him, we find that Porter's statements were spontaneous to the extent he was unlikely to have fabricated them. Therefore, for the reasons stated above, we hold Porter's spontaneous utterances were admissible against defendant Ross and that the rule established in *Bruton* predicating admission of extrajudicial statements on the right of a codefendant to cross-examine his codefendant-declarant does not apply and was not violated. Ross's assignment of error as to the admissibility of Porter's statements is overruled.

[3] Both defendants assign as error the denial of their motions to dismiss. The motions to dismiss should have been denied as to each defendant if there was, as to each, substantial evidence of all material elements of the offense. It does not matter whether the evidence is direct or circumstantial. *See State v. Smith*, 40 N.C. App. 72, 252 S.E.2d 535 (1979). In the case *sub judice*, there was evidence that Hal B. Martin was robbed at gunpoint by more than one person; that the robbers fled from the scene of the robbery in a red Dodge Aspen; that at least one person left the red Dodge Aspen as it was being pursued by a policeman; that officers used a bloodhound to follow the trail of those leaving the red Dodge Aspen for approximately one mile until they found both defendants under a bridge; that a .32 caliber revolver was found under the bridge; and that one of the defendants referred to a bag taken in the robbery. We hold that this is substantial evidence from which the jury could find that both defendants participated in the robbery. *See State v. Collins*, 35 N.C. App. 250, 241 S.E.2d 98 (1978). These assignments of error are overruled.

We have examined the other assignments of error brought forward by the defendants and find them to be without merit.

No error.

Judge WEBB concurs.

Judge MARTIN (Harry C.) dissents.

Judge MARTIN (Harry C.) dissenting.

I must respectfully dissent from the majority opinion. The heart of the case is whether defendants suffered prejudicial error by the admission, over objections, of the incriminating statements of Porter, made after he and Ross were arrested. The pertinent parts of the record are not long and are helpful to an understanding of this issue.

After the facts of the armed robbery were established by the witnesses Martin and Lackey, the state called Joe Wilson, Jr., a Mecklenburg County police officer. He testified he received a radio message about the robbery and headed north looking for a suspect vehicle. He located the vehicle, a red 1976 Aspen, followed it at high speed, and finally had to ditch his car to avoid a collision. The Aspen at that point was backing out of a driveway into the highway. He saw a black male run into the woods, and the red car drove off at high speed. Other officers came; they got a bloodhound and a helicopter. The dog took up the trail and they soon came upon two suspects who had covered themselves with a wooden portion of an old bridge. With drawn weapons, the officers ordered the two defendants out from under the bridge. The defendant Porter was handcuffed and was under arrest and had not been advised as to his constitutional rights pursuant to *Miranda.* Wilson radioed his superior officer. The following testimony was taken in the absence of the jury:

> Prior to the radio message from Sergeant Burden I had asked Defendant Porter no questions, other than telling the defendants to come out from under the bridge I had no communications with either of them. None of the officers asked them anything else.

QUESTION BY THE COURT:

> Q. Tell me what the statement was.

> A. "The bag is in the car" and then I asked "what bank bag?" and Defendant Porter replied "the bag from the robbery."

CROSS EXAMINATION by Mr. Pollard for Defendant Porter:

We were speaking by walkie-talkie and Sergeant Burden heard the message that we had two suspects in custody. The defendant was handcuffed. Mr. Porter had not been read his rights and he was under arrest. After Defendant Porter responded "It is in the car" I asked him the question, "what bag?"

The following testimony was in the presence of the jury:

Sergeant Burden and I were communicating with walkie-talkie radios. After Sergeant Burden asked, "Did you find a bank bag?" defendant Porter replied, as if answering the radio:

. . . .

"The bank bag is in the car." At that time I said, "What bank bag". I was not aware at that time that a bank bag had been taken in the robbery. Then Defendant Porter responded:

. . . .

"The bag from the robbery" . . . .

After Mr. Porter made the statements I made radio announcements stating that the suspects said:

. . . .

"That the bank bag was in the car."

Later, witness Overcash testified:

Then a voice came over the radio asking if there was a bank bag found.

Q. What happened next?

. . . .

A. About that time Porter said it was in the car.

Officer Wilson then said what bag, turkey?

. . . .

State v. Porter

Q. What happened after Officer Wilson said, "What bag, turkey?"

A. I believe Officer Wilson radioed back the suspect said it was in the car.

. . . .

Q. What, if anything, did you hear said after Officer Wilson said, "What bag?"

A. He said it was the one that was taken at the store.

. . . ..

Q. Who said, "The one from the store?"

A. Porter.

During his charge to the jury, the judge stated:

That Wilson talked with Officer Burden by radio and was asked if a bank bag had been found, to which the Defendant Porter said it was in the car, and that upon being asked, "What bag?" stated, "The bag from the robbery."

. . . .

Now, Members of the Jury, there is evidence which tends to show that the Defendant Porter has admitted a fact relating to the crime charged in this case. If you the jury find that the defendant made such an admission, then you should consider all of the circumstances under which it was made in determining whether it was a truthful admission and the weight that you will give to it.

At no time during the trial did the trial judge give any cautionary or limiting instruction to the jury concerning how they should consider the testimony of Porter.

## ROSS'S APPEAL

The statements by Porter allowed into evidence over Ross's objections are extremely prejudicial to Ross, and their admission is reversible error. The statements admit the very crime charged, even though redacted to some extent. The very effort to "sanitize" the statements as to Ross indicates their prejudicial nature.

State v. Porter

Porter, the out-of-court declarant, did not testify in the trial. Ross had no way to cross-examine Porter. Ross's right of cross-examination, secured by the Confrontation Clause of the sixth amendment of the United States Constitution and section 23 of article I of the Constitution of North Carolina, was violated by the admission of this testimony. *Bruton v. United States*, 391 U.S. 123, 20 L. Ed. 2d 476 (1968); *State v. Fox*, 274 N.C. 277, 163 S.E.2d 492 (1968); *State v. Johnson*, 29 N.C. App. 534, 225 S.E.2d 113 (1976).

I cannot say that the erroneous admission of the testimony was harmless error beyond a reasonable doubt. The evidence against Ross was primarily circumstantial. There is a reasonable possibility that the evidence complained of contributed to the conviction. *Fahy v. Connecticut*, 375 U.S. 85, 11 L. Ed. 2d 171 (1963).

The majority in effect holds that if the extrajudicial statement is credible and reliable, the non-declarant defendant's rights to cross-examination have been fulfilled and there is no violation of the *Bruton* rule. This is the reverse of the purpose of cross-examination. It is the credible witness whom the defendant needs to cross-examine. Where the testimony is so incredible as to be unbelievable by a jury, defendant may well waive his right to cross-examine. At the very least, constitutional rights cannot be made to turn on whether this Court, or any other, is of the opinion that the extrajudicial statement is credible. Further, the opinion implies that *Bruton* is limited to "confessions." *Bruton* itself states that its rule applies to a context "where the powerfully incriminating extrajudicial *statements* of a codefendant . . . are deliberately spread before the jury in a joint trial." 391 U.S. at 135-36, 20 L. Ed. 2d at 485 (emphasis added). A thorn bush by another name is just as prickly. Constitutional rights cannot be determined by the name tag given to the prejudicial extrajudicial statement.

In my opinion *Bruton* is applicable to this case, and Ross is entitled to a new trial.

### PORTER'S APPEAL

I vote a new trial for Porter because of the vital incriminating question put to him by the officer while in custody and without complying with the *Miranda* rules. The majority says officer Wilson was "still getting the big picture" and that there "was no focus on the accused" when the question was put to defendant. Wilson had

knowledge of the armed robbery and some description of the car involved. He had chased the car, saw a man run into the woods, tracked the man with a bloodhound that unerringly identified Porter with its nose, found Porter hiding, and arrested him with drawn weapon. Porter was handcuffed, under arrest and in custody. Surely, Wilson believed that he had handcuffed one of the robbers.

It is true that Porter's first statement, "the bag is in the car," apparently was a response to a radio message not directed to him. That statement alone was ambiguous; it could have referred to any type "bag." Then, however, without any compliance with *Miranda*, Wilson asked Porter "What bank bag?" or "What bag, turkey?" and Porter replied, "the one that was taken at the store" or "the bag from the robbery." All the quoted statements were before the jury. Wilson further testified that when he asked Porter the question about the bag, he (Wilson) did not know that a bank bag had been taken in the robbery.

Although the first statement by Porter made in response to the radio transmission was volunteered and can be fairly categorized as spontaneous, and therefore is not protected by *Miranda*, the subsequent question and answer of defendant certainly violated Porter's constitutional rights as set out in *Miranda*. Clearly, all the elements invoking *Miranda* procedures were present: defendant was in custody, handcuffed; from the circumstances of the chase, tracking and arrest, suspicion was properly focused on Porter. Officer Wilson referred to him as a "suspect" when Porter was arrested. Porter was entitled to be advised of his rights under *Miranda* before he was asked the question, "What bag, turkey?" and made his devastating reply. Officer Wilson reasonably knew that any answer by Porter would be incriminating. That was why he asked the question. According to Wilson, he used the words "What *bank* bag?" He wasn't inquiring about just any bag but a bank bag in connection with an armed robbery.

By the failure to safeguard Porter's constitutional rights, prejudicial error was committed and he is entitled to a new trial.