STATE OF NORTH CAROLINA v. JOHNELL PORTER and KEITH EMERSON ROSS

No. 129

(Filed 31 August 1981)

1. **Robbery § 3; Criminal Law § 71— robbery victim's testimony—shorthand statement of fact**

    The trial court in an armed robbery case did not err in allowing a robbery victim to testify that the cash register at the crime scene was difficult to open or that he had been robbed, since such statements were properly admitted as shorthand statements of fact.

2. **Robbery § 4— armed robbery—sufficiency of evidence**

    Evidence was sufficient to be submitted to the jury in a prosecution for armed robbery where it tended to show that a store employee was robbed at gunpoint by more than one person; the persons who robbed him fled from the scene in a red Dodge Aspen; at least one person fled from the Dodge into the woods at the end of a high speed chase by a county police officer; police officers used a bloodhound to follow the trail of that person to a location where both defendants were found hiding under a bridge; and a .32 caliber revolver was also found at that location. G.S. 14-87.

3. **Robbery § 5.4— armed robbery charged—instruction on common law robbery not required**

    The trial court in an armed robbery case properly refused defendants' request for an instruction on common law robbery, since the victim testified that all he observed during the incident before being rendered unconscious was the barrel of a gun held at his forehead, and there was no evidence in the record to contradict this testimony

4. **Constitutional Law § 45— right of accused to represent self—alternative right to counsel**

    In this jurisdiction an accused has the right to appear in propria persona or, in the alternative, by counsel, but he may not represent himself as cocounsel with an attorney.

**5. Criminal Law § 92.1 — joinder of case against two defendants**

    The trial court did not err in granting the State's motion to join defendant's case with that of a codefendant for trial, since both defendants were charged with accountability for the same armed robbery; moreover, there was no merit to defendant's contention that, had the parties been tried separately, a witness's testimony that he saw a man not fitting defendant's description leave the getaway vehicle and run into the woods would not have been admissible against him, since the witness's testimony would have been admissible against defendant in any event as the witness's personal observation of one of the events taking place during the incident, and the testimony would be more favorable to defendant than prejudicial. G.S. 15A-926(b)(2)a; 15A-927(c)(2)a.

**6. Criminal Law § 40.2 — transcript of grand jury proceedings**

    The trial court did not err in denying defendant's request for a transcript of the grand jury proceedings concerning his indictment, since such proceedings are considered secret, and defendant is adequately protected by his right to object to improper evidence and to cross-examine the witnesses presented against him at trial. G.S. 15A-623.

**7. Criminal Law § 44 — bloodhound — pure blood established**

    If a dog's owner or handler identifies the dog as a bloodhound and the dog justifies this description by his performance, then the pure blood requirement for introduction of evidence of the dog's conduct has been met; therefore, testimony in this armed robbery case by the handler of the dog which tracked defendant that he was familiar with the dog's lineage, that the dog was a pure blood bloodhound, that the dog had been trained to follow the human scent, and that the dog had successfully done so on at least 60 prior occasions was adequate to establish the dog's pure blood.

**8. Criminal Law § 75.9 — volunteered statement — officer's question not interrogation**

    In a prosecution for armed robbery where the evidence tended to show that the conversation in question transpired immediately after both defendants were apprehended and handcuffed, the arresting officer radioed his supervisor to inform him that two suspects had been taken into custody, the supervisor asked the arresting officer if he had recovered a bank bag, defendant heard the question over the radio and stated that the bag was in the car, the arresting officer then asked "What bank bag?", and defendant replied, "The bag from the robbery," defendant's statement about the location of the bag was volunteered and was not made in response to an in-custody interrogation; moreover, the arresting officer's question addressed to defendant did not convert the dialogue into an interrogation since the question was a request that defendant explain his previous statement, and the request was an immediate response in an emotional situation made before the officer had the opportunity to form a design or motivation to elicit incriminating statements from defendant.

**9. Constitutional Law § 72 — inculpatory statement by codefendant — right to confrontation not abridged**

    Defendant's constitutional right of confrontation was not violated by the admission of inculpatory statements made by a codefendant at the time of his

arrest, though the codefendant elected not to testify at trial, since the code-fendant's statements were admissible as spontaneous utterances and as such were admissible against defendant as an exception to the hearsay rule, and since the statements were inherently reliable due to the very nature of their spontaneity.

### 10. Criminal Law § 92.1 — consolidated trial — same charges against two defend-ants — codefendant's statements admissible against defendant

There was no merit to defendant's contention that the trial court erred in joining his case for trial with that of a codefendant because he was unfairly prejudiced by the admission of the codefendant's statements at their joint trial and, had he been tried separately, such evidence would have been excluded, since the codefendant's extrajudicial statements were indeed admissible against defendant under the spontaneous utterance exception to the hearsay rule, and defendant failed to show an abuse of the trial court's discretion in joining the charges against the two defendants. G.S. 15A-927(c)(1).

DEFENDANTS appeal as a matter of right from the decision of the Court of Appeals, 50 N.C. App. 568, 274 S.E. 2d 860 (1981) (opinion by *Hill, J.,* with *Webb, J.,* concurring and *Martin (Harry C.), J.,* dissenting) affirming the judgments of *Ferrell, J.,* entered at the 14 January 1980 Session of Superior Court, MECKLENBURG County.

Defendants were charged in indictments, proper in form, with armed robbery. Their cases were consolidated for trial over each defendant's objection and the jury returned a verdict finding both guilty of armed robbery. The trial court sentenced defendant Ross to a term of imprisonment for not less than twenty years nor more than thirty years, and sentenced defendant Porter to imprisonment for not less than twenty-five years nor more than thirty years. The majority in the Court of Appeals, with Judge Harry C. Martin dissenting, found no error which would entitle either defendant to a new trial. Defendants appeal to this Court as a matter of right pursuant to G.S. 7A-30(2).

The State's evidence tended to show that between 9:00 and 9:15 a.m. on the morning of 5 October 1979 Mr. Hal B. Martin, an employee at the Phillips 73 Store on Highway 73 and Beatties Ford Road in Mecklenburg County, was standing in the back of the store when he felt a hand on his shoulder and heard someone say "don't turn around." A gun was held to his head and he was ordered to crouch on the floor. He was then hit on the head and rendered unconscious. He never saw his assailant.

When Mr. Martin regained consciousness he observed a customer, Mr. William Lackey, lying on the floor. Mr. Martin noticed that a bag containing sandwich labels, a bag of loose cigarettes, and a bank bag containing approximately $150.00 had been taken from the store. He immediately reported the incident to law enforcement officers.

Mr. William Lackey testified that when he arrived at the Phillips 73 Store on the morning of the robbery, he observed a red Dodge Aspen automobile parked at the end of the building with the engine running. When he entered the store he was hit on the head from behind and ordered to crawl on the floor. He was later beaten until be became unconscious, but not before hearing a male voice from the back of the store. He glanced at his assailant, whom he described as a black male approximately five feet eight inches tall. As Mr. Martin was calling the police, Mr. Lackey regained consciousness and described to the police over the telephone the vehicle he had seen parked outside the store.

An alert for the vehicle was broadcast by the police dispatcher. Shortly thereafter, Officer Joe Wilson of the Mecklenburg County Police Department located a red Dodge Aspen near the location of the robbery and began to pursue it. A high speed chase ensued, ending when Officer Wilson was forced to drive his car into a ditch to avoid a collision with the Dodge. After driving into the ditch, Officer Wilson observed a black male about five feet eight inches tall leave the Dodge and run into the woods. The Dodge was driven away at a high rate of speed.

Officer Wilson summoned assistance and a bloodhound was brought to the location at which the black male ran into the woods. County officers followed the bloodhound about one mile into the woods to an old bridge under which both defendants were hiding. A .32 caliber revolver was also found under the bridge. The officers held both defendants at gun point until they were handcuffed. Officer Wilson then notified his supervisor by radio that two suspects were being held. The supervisor then asked Wilson if a bank bag had been found. Defendant Porter heard this question and responded, "The bank bag is in the car." Officer Wilson then asked, "What bank bag?"; to which Porter replied, "The bag from the robbery."

State's witness Dennis Sink testified that as he was driving upon Beatties Ford Road on the morning of 5 October 1979 he observed a red Dodge Aspen traveling in the opposite direction at a high rate of speed. He saw one of the passengers in the car throw two paper bags out of the car window. He then noticed a county police car following the Dodge, also at a high rate of speed. Mr. Sink turned his vehicle around, stopped and picked up the paper bags, and turned them over to law enforcement officers. He stated that the bags contained food labels and cigarettes.

Defendants presented no evidence at trial.

*Scott T. Pollard for defendant Johnell Porter.*

*Assistant Public Defender Lyle J. Yurko for defendant Keith Emerson Ross.*

*Attorney General Rufus L. Edmisten by Assistant Attorney General Ben G. Irons, II, for the State.*

COPELAND, Justice.

Defendants argue numerous assignments of error on appeal. We have carefully considered each assignment and conclude that the trial court committed no error which would entitle either defendant to a new trial.

I

Although defendants submitted separate briefs, several issues are argued by both defendants. For the sake of clarity and convenience, we will first address those issues which are raised by both defendants.

[1] Defendants first contend that the trial court erred in allowing State's witness Hal Martin to testify that the cash register at the Phillips 73 Store was difficult to open. Defendants argue that this testimony was an expression of opinion by a non-expert witness, and therefore inadmissible.

As a general rule, a witness may not give opinion evidence when the facts underlying the opinion are such that the witness can state them in a manner which will permit an adequate understanding of them by a jury and the witness is no better qualified than the jury to draw inferences and conclusions from

the facts. *State v. Sanders*, 295 N.C. 361, 245 S.E. 2d 674 (1978); *State v. Watson*, 294 N.C. 159, 240 S.E. 2d 440 (1978). However, this Court has long held that despite the general rule prohibiting opinion evidence, a witness may employ "shorthand statements of fact" as a means of referring to matters about which he has previously testified. Such shorthand statements are admissible even though the witness must also state a conclusion or opinion in rendering them. *State v. Yancey*, 291 N.C. 656, 231 S.E. 2d 637 (1977); *State v. Sneeden*, 274 N.C. 498, 164 S.E. 2d 190 (1968); 1 Stansbury's North Carolina Evidence § 125 (Brandis Rev. 1973). In the present case, Mr. Martin first testified that to open the cash register one must "put a dime in it" and hit the groceries and total keys, or one must punch the no sale key. His subsequent statement that the cash register was difficult to open was therefore a shorthand method of referring to his prior testimony, and defendants' objection to the statement was properly overruled.

Under similar reasoning, we likewise find defendants' next assignment of error without merit. Defendants maintain that the trial court erred in allowing Mr. Martin to testify that he had been "robbed," since such a statement was conclusory and involved a statement of opinion by the witness. Before making this statement Mr. Martin had testified that a gun had been held to his head, that he was forced to crawl on the floor, that he had been beaten over the head until rendered unconscious, and that money and several other items had been taken from the store. His later testimony that he had been "robbed" was thus properly admitted as a shorthand statement of the facts.

Defendants also allege that the trial court erred in denying their motions to dismiss on the ground that the evidence was insufficient to sustain their convictions. In ruling upon defendants' motion to dismiss, the trial court is required to interpret the evidence in the light most favorable to the State, drawing all reasonable inferences in the State's favor. *State v. King*, 299 N.C. 707, 264 S.E. 2d 40 (1980); *State v. Powell*, 299 N.C. 95, 261 S.E. 2d 114 (1980). The defendants' motion must be denied if the State has offered substantial evidence against defendant of every essential element of the crime charged. "Substantial evidence" is defined as that amount of relevant evidence that a reasonable mind might accept as adequate to support a conclusion. *State v. Fletcher*, 301

N.C. 709, 272 S.E. 2d 859 (1981); *State v. Smith*, 300 N.C. 71, 265 S.E. 2d 164 (1980). The test of the sufficiency of evidence to withstand dismissal is the same whether the State's evidence is direct, circumstantial, or a combination of the two. *State v. Cutler*, 271 N.C. 379, 156 S.E. 2d 679 (1967).

[2] An armed robbery occurs when an individual takes or attempts to take personal property from the person of another, or in his presence, or from any place of business or residence where there is a person or persons in attendance, by the use or threatened use of a dangerous weapon, whereby the life of a person is endangered or threatened. G.S. 14-87. *See also State v. Ballard*, 280 N.C. 479, 186 S.E. 2d 372 (1972); *State v. Waddell*, 279 N.C. 442, 183 S.E. 2d 644 (1971). In the case *sub judice*, the defendants acknowledged that a robbery had taken place. The State presented evidence tending to show that Hal Martin was robbed at gunpoint by more than one person, that the persons who robbed him fled from the scene in a red Dodge Aspen, that at least one person fled from the Dodge into the woods at the end of a high speed chase by a county police officer, that police officers used a bloodhound to follow the trail of that person to a location where both defendants were found hiding under a bridge, and that a .32 caliber revolver was also found at that location. After considering this evidence in the light most favorable to the State, we find that there was substantial evidence presented of defendants' guilt on each material element of armed robbery. The determination of defendants' guilt or innocence was therefore a question to be answered by the jury, and the trial court did not err in denying defendants' motion to dismiss.

[3] Defendants next argue that the trial court erred in failing to instruct the jury on common law robbery. As a general rule, when there is evidence of defendant's guilt of a crime which is a lesser included offense of the crime stated in the bill of indictment, the defendant is entitled to have the trial judge submit an instruction on the lesser included offense to the jury. *State v. Redfern*, 291 N.C. 319, 230 S.E. 2d 152 (1976); *State v. Bell*, 284 N.C. 416, 200 S.E. 2d 601 (1973). Common law robbery is a lesser included offense of armed robbery, and an indictment for armed robbery will support a conviction of common law robbery. *State v. Black*, 286 N.C. 191, 209 S.E. 2d 458 (1974). Nevertheless, the trial judge is not required to instruct on common law robbery when

the defendant is indicted for armed robbery if the uncontradicted evidence indicates that the robbery was perpetrated by the use or threatened use of what appeared to be a dangerous weapon. Justice Branch (later Chief Justice), speaking for the Court in *State v. Thompson*, 297 N.C. 285, 289, 254 S.E. 2d 526, 528 (1979), set forth the test for determining when an instruction on common law robbery is required as follows:

> "We conclude that when the State offers evidence in an armed robbery case that the robbery was attempted or accomplished by the use or threatened use of what appeared to the victim to be a firearm or other dangerous weapon, evidence elicited on cross-examination that the witness or witnesses could not positively testify that the instrument used was in fact a firearm or dangerous weapon is not of sufficient probative value to warrant submission of the lesser included offense of common law robbery. When a person perpetrates a robbery by brandishing an instrument which appears to be a firearm, or other dangerous weapon, in the absence of any evidence to the contrary, the law will presume the instrument to be what his conduct represents it to be—a firearm or other dangerous weapon."

*See also State v. Rivens*, 299 N.C. 385, 261 S.E. 2d 867 (1980).

In the case before us, Mr. Hal Martin testified that all he observed during the incident before being rendered unconscious was the barrel of a gun, held at his forehead. There is no evidence in the record to contradict this testimony. We therefore presume the instrument described by Mr. Martin to be a firearm, and hold that the trial court properly refused defendants' request for an instruction on common law robbery.

## II

We next address those issues argued solely by defendant Porter.

[4] Porter contends that the trial court erred in denying his motion to participate as co-counsel at his trial, in violation of his constitutional right to represent himself, guaranteed by the Sixth Amendment to the United States Constitution. The Sixth Amendment, made applicable to the states by the Fourteenth Amendment, guarantees the accused in a State criminal action the right to proceed without counsel and represent himself at trial when he

voluntarily and knowingly elects to do so. *Faretta v. California,* 422 U.S. 806, 95 S.Ct. 2525, 45 L. Ed. 2d 562 (1975); *State v. Robinson,* 290 N.C. 56, 224 S.E. 2d 174 (1976). Defendant Porter urges us to interpret the holding of the United States Supreme Court in *Faretta v. California, supra,* as establishing not only the right to represent oneself in a criminal action, but also as establishing the right of an accused to represent himself as co-counsel with an attorney. This Court has previously held in *State v. House,* 295 N.C. 189, 244 S.E. 2d 654 (1978), that the *Faretta* decision extends only to an accused's right to forego all assistance of counsel and does not create a right to be simultaneously represented by himself and an attorney. We reaffirmed this holding in *State v. Parton,* 303 N.C. 55, 277 S.E. 2d 410 (1981). It is clear that in this jurisdiction, an accused has the right to appear *in propria persona* or, in the alternative, by counsel. Since defendant Porter elected to retain the services of his court-appointed attorney, the trial court properly denied his motion to participate as co-counsel, and his allegations to the contrary are without merit.

**[5]** By his next assignment of error, defendant submits that the trial court erred in granting the State's motion to join his case with defendant Ross' case for trial, and erred in denying his motion to sever. G.S. 15A-926(b)(2)a provides that the charges against two or more defendants may be joined for trial when each of the defendants is charged with accountability for each offense joined. Since both defendants in the case before us were charged with accountability for the same armed robbery, the armed robbery charges against them were properly joined for trial.

Nevertheless, defendant complains that the consolidation prevented him from obtaining a fair trial, and therefore his motion to sever should have been granted pursuant to G.S. 15A-927(c)(2)a. The decision to join the charges against two or more defendants for trial is within the sound discretion of the trial judge and will not be disturbed on appeal absent an abuse of that discretion. The defendant seeking to overturn the discretionary ruling must show that the joinder has deprived him of a fair trial. *State v. Slade,* 291 N.C. 275, 229 S.E. 2d 921 (1976); *State v. Alford,* 289 N.C. 372, 222 S.E. 2d 222 (1976), *death sentence vacated* 429 U.S. 809, 97 S.Ct. 46, 50 L. Ed. 2d 69 (1976).

Defendant Porter contends that had the parties been tried separately, Mr. Martin's testimony that he saw a man not fitting

Porter's description leave the Dodge and run into the woods would not have been admissible against him, and that the admission of this testimony deprived him of a fair trial. We disagree. Mr. Martin's testimony would be admissible against defendant Porter in any event as the witness' personal observation of one of the events taking place during the incident, which observation is relevant as tending to prove a fact in issue, the identity of the robbers. *See Cross v. Beckwith,* 293 N.C. 224, 238 S.E. 2d 130 (1977); *State ex rel. Freeman v. Ponder,* 234 N.C. 294, 67 S.E. 2d 292 (1951). We fail to understand how defendant Porter could be prejudiced by the admission of this evidence which tended to prove that he was not the individual who fled from the Dodge. Such testimony would be more favorable to him than prejudicial. Defendant's assignment of error is without merit and overruled.

[6] Porter next argues that the trial court committed prejudicial error in denying his request for a transcript of the grand jury proceedings concerning his indictment. An accused in this jurisdiction has no right to obtain a transcript of the grand jury proceedings against him. Such proceedings are considered "secret." G.S. 15A-623. Defendant is adequately protected by his right to object to improper evidence and cross-examine the witnesses presented against him at trial. *See generally United States v. Kernodle,* 367 F. Supp. 844 (M.D.N.C. 1973).

[7] Defendant Porter also maintains that the trial court erred in admitting the evidence relating to the tracking by a bloodhound. Before the conduct of bloodhounds will be received into evidence it must be shown:

> "(1) That they are of pure blood, and of a stock characterized by acuteness of scent and power of discrimination; (2) that they possess these qualities, and have been accustomed and trained to pursue the human track; (3) that they have been found by experience reliable in such pursuit; (4) and that in the particular case they were put on the trail of the guilty party, which was pursued and followed under such circumstances and in such way as to afford substantial assurance, or permit a reasonable inference, of identification." *State v. McLeod,* 196 N.C. 542, 545, 146 S.E. 409, 411 (1929).

Porter contends that since the dog handler who testifed at trial could not establish the pedigree of the dog that tracked him, the

first element specified in *McLeod* was not established. It is defendant's position that to show "pure blood," the dog's registration papers must be introduced into evidence. Defendant's allegation was squarely rejected by this Court in *State v. Rowland,* 263 N.C. 353, 139 S.E. 2d 661 (1965). In that case Justice Sharp (later Chief Justice), speaking for the Court, set forth the test for determining "pure blood" as follows:

> "In practice, if the dog has been identified as a bloodhound, it has been the conduct of the hound and other attendant circumstances, rather than the dog's family tree, which have determined the admissibility of his evidence.

> We find no North Carolina cases, and defendant has cited us to none, in which bloodhound evidence has been excluded for a deficiency in the proof of the bloodhound's pedigree if he is shown to be naturally capable of following the human scent, *i.e.,* that he is a bloodhound, and if the evidence is corroborative of other evidence tending to show defendant's guilt." 263 N.C. at 359, 139 S.E. 2d at 665.

It is thus sufficient if the dog's owner or handler identifies the dog as a bloodhound and the dog justifies this description by his performance. In the case *sub judice* the handler of the dog that tracked defendant testified that he was familiar with the dog's lineage and that he was a pureblood bloodhound. He further stated that the dog had been trained to follow the human scent and had successfully done so on at least 60 prior occasions. We find this testimony adequate to establish the dog's "pure blood" under the holding in *Rowland,* and defendant's allegations to the contrary are overruled.

[8] The thrust of defendant Porter's case on appeal is his contention that the trial court erred in denying his motion to suppress the incriminating statements he made at the time of his arrest. Porter maintains that his statements were elicited by a custodial interrogation from law enforcement officers before he was advised of his constitutional rights, and are therefore inadmissible under the holding of *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed. 2d 694 (1966). There is no question but that defendant Porter's statements were rendered after he was taken into custody and before he was advised of his constitutional rights. The question for our determination is thus whether Porter's

statements were given in response to an "interrogation" by law enforcement officers which would bring his statements under the exclusionary rule established in *Miranda.* We agree with the majority of the Court of Appeals that the dialogue at issue in this case between defendant Porter and police officers cannot be characterized as an "interrogation," and therefore Porter's statements were properly admitted into evidence against him.

The conversation to which defendant Porter objects transpired immediately after both defendants were apprehended and handcuffed. Officer Wilson radioed his supervisor to inform him that two suspects had been taken into custody. The supervisor asked Officer Wilson if he had recovered a bank bag. Defendant Porter heard the question over the radio and stated, "The bank bag is in the car." Officer Wilson then asked "What bank bag?", to which Porter replied, "The bag from the robbery."

When the State offers a defendant's incriminating statement into evidence and defendant objects, the trial court must conduct a *voir dire* hearing to determine its admissibility. *State v. Jones,* 294 N.C. 642, 243 S.E. 2d 118 (1978). The trial judge's finding after the *voir dire* hearing that an inculpatory statement was freely and voluntarily given is conclusive on appeal when supported by competent evidence. *State v. Parton, supra, State v. Boykin,* 298 N.C. 687, 259 S.E. 2d 883 (1979). In the case before us, a *voir dire* hearing was held to determine the admissibility of Porter's inculpatory statements, after which the trial court found that the statements were spontaneous utterances, voluntarily given, and not in response to an in-custody interrogation within the meaning of *Miranda.*

The Court in *Miranda* expressly noted that not all statements obtained by the police after a person has been taken into custody are to be considered the product of an interrogation, stating:

> "Confessions remain a proper element in law enforcement. Any statement given freely and voluntarily without any compelling influences is, of course, admissible in evidence. The fundamental import of the privilege while an individual is in custody is not whether he is allowed to talk to the police without the benefit of warnings and counsel, but whether he can be interrogated. There is no requirement that police stop a person who enters a police station and

states that he wishes to confess to a crime, or a person who calls the police to offer a confession or any other statement he desires to make. Volunteered statements of any kind are not barred by the Fifth Amendment and their admissibility is not affected by our holding today." 384 U.S. at 478, 86 S.Ct. at 1630, 16 L.Ed. 2d at 726.

Porter's initial statement that "the bank bag is in the car" was clearly the type of volunteered statement expressly excluded from the *Miranda* holding. The question by Officer Wilson's supervisor was addressed to Officer Wilson, not to defendant. Porter's response was spontaneous and voluntary, and therefore admissible despite the fact that he had not yet been informed of his constitutional rights.

We further hold that the question Officer Wilson addressed to defendant, "What bag?", did not convert the dialogue into an "interrogation" within the meaning of *Miranda.* As we said in *State v. Haddock,* 281 N.C. 675, 682, 190 S.E. 2d 208, 212 (1972):

"[a] voluntary in-custody statement does not become the product of an 'in-custody interrogation' simply because an officer, in the course of appellant's narration, asks defendant to explain or clarify something he has already said voluntarily."

Thus, where a defendant voluntarily stated that he committed a murder, and a law enforcement officer asked him to "explain what happened," the Court held that the officer's statement did not convert the conversation into an "interrogation," and defendant's subsequent statements were admissible despite the absence of *Miranda* warnings. *State v. McZorn,* 288 N.C. 417, 219 S.E. 2d 201 (1975), *death sentence vacated* 428 U.S. 904, 96 S.Ct. 3210, 49 L. Ed. 2d 1210 (1976). Likewise, where defendant ran up to a burning building and said to a uniformed police officer, "I didn't mean for it to happen like this," the police officer's request to explain what she meant by that statement did not constitute an "interrogation" rendering defendant's susequent confession inadmissible. *State v. Freeman,* 295 N.C. 210, 244 S.E. 2d 680 (1978). The principle that emerges from these decisions is that to constitute an "interrogation" within the meaning of *Miranda,* the conduct of the police must involve a measure of compulsion. "Interrogation" involves a procedure designed to elicit a statement from the individual at whom it is directed. An officer's request in the heat of an emo-

State v. Porter

tional situation that the accused explain or clarify a volunteered statement is not a procedure designed to elicit an inculpatory response.

Applying these principles to the facts of the case *sub judice*, it is apparent that Officer Wilson's question, "What bag?", was a request that Porter explain his previous statement, which request was an immediate response in an emotional situation, made before Officer Wilson had the opportunity to form a design or motivation to elicit incriminating statements from Porter. Consequently, under the prior decisions of this Court, Officer Wilson's question did not transform the situation into an "interrogation," and defendant's subsequent statements are admissible in the absence of *Miranda* warnings.

Defendant submits, however, that our prior decisions have been modified by the United States Supreme Court's decision in *Rhode Island v. Innis*, 446 U.S. 291, 100 S.Ct. 1682, 64 L.Ed. 2d 297 (1980). In that case, the Court was called upon to address for the first time the meaning of "interrogation" as it was employed in *Miranda*, and defined the term as follows:

"We conclude that the Miranda safeguards come into play whenever a person in custody is subjected to either express questioning or its functional equivalent. That is to say, the term 'interrogation' under Miranda refers not only to express questioning, but also to any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect. The latter portion of this definition focuses primarily upon the perceptions of the suspect, rather than the intent of the police. This focus reflects the fact that the Miranda safeguards were designed ·to vest a suspect in custody with an added measure of protection against coercive police practices, without regard to objective proof of the underlying intent of the police. A practice that the police should know is reasonably likely to envoke an incriminating response from a suspect thus amounts to interrogation. But, since the police surely cannot be held accountable for the unforeseeable results of their words or actions, the definition of interrogation can extend only to words or actions on the part of police officers that they should have known were reasonably likely

to elicit an incriminating response." 446 U.S. at 300-02, 100 S.Ct. at 1689-90, 64 L.Ed. 2d at 307-08.

It is Porter's position that Officer Wilson "should have known" that his question was likely to elicit an incriminating response, and thus it was "interrogation" within the definition set forth in *Innis*. We believe defendant Porter's argument ignores the language in *Innis* which emphasizes that the holding in *Miranda* was designed to protect an accused from *coercive* police practices. The facts and holding of *Innis* reflect this emphasis. In that case, a body was discovered in the vicinity of a school for handicapped children. It was determined that the individual died as a result of wounds received from a shotgun blast. Defendant was arrested near the school and taken to police headquarters in a police vehicle. During the drive, two of the patrolmen who arrested defendant spoke with each other concerning the possibility that one of the handicapped children from the nearby school might find a weapon and get hurt. Defendant overheard the conversation and volunteered to show the patrolmen where the shotgun was located. The Court found that the patrolmen had no reason to know that their conversation was likely to elicit an inculpatory response, therefore it did not constitute an "interrogation" within the meaning of *Miranda*. It is difficult to discern how the question asked by Officer Wilson could be any more likely to invoke an incriminating response than was the conversation involved in *Innis*. Officer Wilson voiced his question as an immediate response to Porter's spontaneous utterance, without the opportunity to reflect or to consider whether his query was reasonably likely to elicit an inculpatory remark. There was no evidence of any coercive practice on the part of the law enforcement officers beyond that inherent in the arrest itself. Under the circumstances present in this case, we hold that the officer had no reason to know that his question was "likely to elicit an incriminating response" within the meaning of *Innis*. Consequently, the definition of "interrogation" in *Innis* does not apply to bring the conversation at issue within the holding of *Miranda*, and defendant Porter's motion to suppress was properly denied.

## III

We finally address those arguments presented by defendant Ross.

[9] Defendant Ross contends that the trial court erred in deny-
ing his motion to suppress the inculpatory statements made by
codefendant Porter at the time of his arrest. Specifically, he
argues that since defendant Porter elected not to testify at trial,
the admission of these statements violated his right, as
guaranteed by the Sixth Amendment of the United States Con-
stitution, to confront the witnesses against him. We disagree and
hold that, under the particular facts and circumstances of this
case, defendant's constitutional right of confrontation was not
violated by the admission of the challenged evidence. Consequent-
ly, defendant Ross is not entitled to a new trial on this basis.

In essence, defendant Ross argues that the trial court's ad-
mission of Porter's statements violated the decision of the
Supreme Court in *Bruton v. United States*, 391 U.S. 123, 88 S.Ct.
1620, 20 L.Ed. 2d 476 (1968). In *Bruton*, the Court held that where
one codefendant made extrajudicial statements implicating the
other and the declarant elected not to testify at trial, the non-
declarant's constitutional right to confront his accuser was
violated by the introduction of those statements at their joint
trial. Significantly though, the Court also emphasized that the
declarant's statements were hearsay and not admissible against
the non-declarant codefendant under any of the recognized excep-
tions to the hearsay rule. 391 U.S. at 128 n. 3, 88 S.Ct. at 1623-24
n. 3, 20 L.Ed. 2d at 480-81 n. 3. Thus, *Bruton* stands for the
general proposition that the admission of a codefendant's extra-
judicial statements against the non-declarant violates the Confron-
tation Clause of the Sixth Amendment if two circumstances
simultaneously co-exist: (1) the statements inculpate the non-
declarant and (2) the statements do not fall within an exception to
the hearsay rule. It is in this light that we must examine Porter's
statements to determine whether their admission deprived Ross
of any constitutional right.

In the first instance, we believe that Porter's statements did,
in fact, inculpate Ross. Officer Wilson testified at the *voir dire*
hearing that when he asked Porter "What bank bag?", Porter
responded, "The bag *we got* from the robbery." Though the trial
court redacted the statement and allowed Officer Wilson to
testify that Porter had said, "The bag from the robbery," the
deletion of an express reference to defendant Ross was insuffi-
cient to absolve the statements of any incriminating implications

as to Ross's guilt. The two defendants were tracked by a bloodhound and found hiding together under a bridge about a mile from the location at which they entered the woods, and a gun was also found nearby. Moreover, Porter and Ross had both been arrested when Porter made the damaging statement. Under such circumstances, the jury could readily infer that Porter meant to incriminate Ross, as well as himself, by the statement, "The bag from the robbery."

In the second instance, however, we are persuaded that Porter's statements fit within an exception to the hearsay rule. For, it is well established that "[w]hen a startling or unusual incident occurs, the exclamations of a participant or a bystander concerning the incident, made spontaneously and without time for reflection or fabrication, are admissible." 1 Stansbury, N.C. Evidence § 164, at 554 (Brandis rev. 1973). The record in the instant case reveals that there was a spirited chase and the tracking of at least one of the defendants with bloodhounds; that defendants were found under a bridge by Officer Wilson and arrested; that a voice came over the officer's walkie-talkie asking him if a bank bag had been recovered; that defendant Porter reacted to the stimulus by saying "The bag is in the car"; that Officer Wilson then asked "What bank bag?"; and that defendant Porter replied "The bag we got from the robbery." [As previously indicated, the trial judge subsequently edited this final statement by eliminating the words "we got."] Thus, we believe Porter's exclamations, made almost immediately after the defendants' apprehension and arrest and in direct response to the unusual stimulus of a question addressed to another over a radio, constituted "spontaneous utterances" and as such were admissible against Ross as an exception to the hearsay rule.

It has been noted that the Confrontation Clause and the hearsay rule "stem from the same roots" and are "designed to protect similar values." *Dutton v. Evans*, 400 U.S. 74, 91 S.Ct. 210, 27 L.Ed. 2d 213 (1970); *California v. Green*, 399 U.S. 149, 90 S.Ct. 1930, 26 L.Ed. 2d 489 (1970). In accordance with that view, this Court has consistently held that statements which fall under exceptions to the hearsay rule may be admitted against codefendants without violating the Confrontation Clause. *See State v. Stevens*, 295 N.C. 21, 243 S.E. 2d 771 (1978) (dying declarations); *State v. Hardy*, 293 N.C. 105, 235 S.E. 2d 828 (1977) (implied ad-

State v. Porter

missions). However, the particular facts of *each* case must be carefully examined by the courts to determine whether an accused's right of confrontation was violated whenever the extrajudicial statement of a codefendant declarant, who is not available for cross-examination, is offered as evidence of the accused's guilt under an exception to the hearsay rule. *Dutton v. Evans, supra; United States v. Carlson*, 547 F. 2d 1346 (8th Cir. 1976). In this regard, the United States Supreme Court has recently held that merely classifying a statement as a hearsay exception does not *automatically* satisfy the requirements of the Sixth Amendment and that hearsay testimony is admissible against the accused, without violating his right of confrontation, only when it bears adequate "indicia of reliability" to guarantee its trustworthiness. *Ohio v. Roberts*, 448 U.S. 56, 100 S.Ct. 2531, 65 L.Ed. 2d 597 (1980).

We have already indicated that Porter's statements, though hearsay, were admissible against defendant Ross as spontaneous utterances. We further hold that this hearsay testimony was inherently reliable[1] due to the very nature of its spontaneity.

> "[S]uch statements derive their reliability from their spontaneity when (1) there has been no sufficient opportunity to plan false or misleading statements, (2) they are impressions of immediate events and (3) they are uttered while the mind is under the influence of the activity of the surroundings." *State v. Deck*, 285 N.C. 209, 214, 203 S.E. 2d 830, 833-34 (1974); *State v. Johnson*, 294 N.C. 288, 291, 239 S.E. 2d 829, 830-31 (1978).

The reliability of Porter's statements are additionally enhanced by the unusual character of the overall surrounding events which culminated in the defendants' arrests and triggered the incriminating exclamations. In sum, upon this record, we are compelled to conclude that defendant Ross's right of confrontation was not violated by the trial court's admission of the testimony complained of at the defendants' joint trial.

---

1. In *Ohio v. Roberts, supra,* the Supreme Court indicated that a sufficient inference of reliability can be made "without more" from the showing that the challenged evidence falls within "a firmly rooted hearsay exception." 448 U.S. at 66, 100 S.Ct. at 2539, 65 L.Ed. 2d at 608. The hearsay exception for spontaneous utterances is firmly rooted in North Carolina. *See* 1 Stansbury, N.C. Evidence § 164 (Brandis rev. 1973).

**[10]**  In his only remaining assignment of error, defendant Ross contends that the trial court erred in granting the State's motion to join both him and Porter for trial and in denying his motion for severance. At the outset, defendant admits that the cases were properly joined for trial under G.S. 15A-926(b)(2)a because Porter and he were charged with accountability for the same offense, the armed robbery. He nevertheless maintains that the joinder was improper under G.S. 15A-927(c)(1) and essentially contends that he was unfairly prejudiced by the admission of Porter's statements at their joint trial because, had he been tried separately, this evidence would have been excluded. This contention cannot be sustained.

G.S. 15A-927(c)(1) requires the prosecutor to select one of three courses of action "[w]hen a defendant objects to joinder of charges against two or more defendants for trial because an out-of-court statement of a codefendant makes reference to him *but is not admissible against him.* . . ." (Emphasis added.) The trial court's joinder of the charges is not subject to attack on the basis of this subsection since we have ruled that Porter's extrajudicial statements were indeed admissible against defendant under the spontaneous utterance exception to the hearsay rule.

Defendant finally asserts that the joinder was improper under G.S. 15A-927(c)(2)b. That statute requires the judge to deny a joinder for trial or grant a defendant's motion to sever when "it is found necessary to achieve a fair determination of the guilt or innocence of that defendant." As we have already stated in addressing the similar contention of defendant Porter, the decision to join the charges against two or more defendants rests within the trial judge's sound discretion, and we may not disturb that decision on appeal unless defendant adequately demonstrates the existence of an abuse of discretion. *State v. Slade, supra; State v. Alford, supra.* It suffices to say that we are not persuaded that joinder in this case deprived defendant Ross of a fair trial. The assignment of error is consequently overruled.

For the foregoing reasons, the convictions of these defendants must be upheld.

The decision of the Court of Appeals is affirmed.

Affirmed.