STATE OF NORTH CAROLINA v. THURMOND BROWN

No. 8321SC694

(Filed 20 March 1984)

1. Constitutional Law § 40— admission of taped conversations—no denial of right to counsel

In a prosecution of defendant upon three charges arising from his hiring of another to assault a neighbor and upon two counts of solicitation to commit murder of two persons involved in the other three cases, the admission of taped conversations between defendant and an undercover officer in which defendant solicited the officer to commit murder did not violate defendant's Sixth Amendment right to the assistance of counsel because the conversations were taped after defendant had been indicted for the three crimes arising from the assault and after defendant had been before the trial court for his first appearance with respect to those charges since (1) defendant's right to counsel with respect to the solicitation to commit murder charges had not attached at the time the conversations were taped, and (2) defendant had validly waived his right to counsel with respect to the other charges before the conversations were taped.

2. Criminal Law § 92.4— consolidation of charges for trial—transactional basis

Charges against defendant for conspiracy to assault with a deadly weapon inflicting serious injury, conspiracy to commit nonfelonious breaking or entering, and nonfelonious breaking or entering, which arose from defendant's hiring of another to assault a neighbor, were properly consolidated for trial with two charges of solicitation to commit murder of persons involved in the prosecution of the assault-related charges, since there was a sufficient transactional connection between the two series of offenses. G.S. 15A-926(a).

State v. Brown

3. **Criminal Law § 79.1— evidence of guilty plea by testifying co-conspirator— harmless error**

The trial court erred in allowing testimony by a co-conspirator that he had been convicted of a crime committed as a part of the conspiracy, but such error was not prejudicial to defendant where the co-conspirator testified concerning his participation in the crime.

4. **Constitutional Law § 65— taped statements by nontestifying informant—admission for non-hearsay purposes—no denial of right to confrontation**

The admission of taped statements made by a nontestifying informant to an undercover officer did not violate defendant's right to confrontation where the statements were not offered for the truth of the matters asserted therein but were received into evidence for non-hearsay purposes, and where sufficient reliability of the informant and trustworthiness of the statements were shown. Sixth Amendment to the U.S. Constitution.

5. **Criminal Law §§ 73.3, 73.4— statements by nontestifying informant—showing state of mind—part of res gestae**

A nontestifying informant's taped statement to an officer that he "knew a guy that wanted a couple people killed" was admissible to explain the officer's subsequent conduct in instigating an undercover investigation, and statements made by the informant which were recorded during an undercover officer's first conversation with defendant concerning his desire to have two people killed were admissible as accompanying and characterizing an act.

6. **Conspiracy § 6— conspiracy to commit felonious assault—agreement to use deadly weapon—sufficiency of evidence**

The State's evidence was sufficient to permit the jury to find an agreement to use a deadly weapon so as to support conviction of defendant for conspiracy to assault with a deadly weapon inflicting serious bodily injury where a witness testified that he saw defendant hand a knife to the perpetrator of the assault on the night the assault was committed.

7. **Criminal Law § 138— voluntary acknowledgment of wrongdoing mitigating circumstance—no standing to assert unconstitutionality**

Defendant had no standing to assert the unconstitutionality of the mitigating circumstance set forth in G.S. 15A-1340.4(a)(2)1 that the defendant voluntarily acknowledged wrongdoing to a law enforcement officer prior to arrest or at an early stage of the criminal process where the trial court did not consider such factor because there was no evidence to support it.

8. **Criminal Law § 138— aggravating factors—crime committed to hinder enforcement of laws—law officer and State's witness as intended victims—no improper use of same evidence for two factors**

The trial court did not improperly use the same evidence to prove more than one aggravating factor in sentencing defendants upon two convictions of solicitation to commit murder when the court found the aggravating factor set forth in G.S. 15A-1340.4(a)(1)d that each crime was committed to hinder the enforcement of laws by disrupting a prosecution against defendant, and the court also found the mitigating factor set forth in G.S. 15A-1340.4(a)(1)e that the in-

tended victims of the murders were a law enforcement officer and a State's witness against defendant.

APPEAL by defendant from *Albright, Judge.* Judgment entered 14 January 1983 in Superior Court, FORSYTH County. Heard in the Court of Appeals 18 January 1984.

*Attorney General Rufus L. Edmisten by Assistant Attorney General Richard L. Kucharski for the State.*

*Morrow and Reavis by John F. Morrow for defendant appellant.*

BRASWELL, Judge.

The crimes for which the defendant has been convicted stem from two occasions in which the defendant hired two individuals to carry out unlawful acts against persons he wished to harm. In those crimes arising from the first instance, the defendant was convicted of conspiracy to assault with a deadly weapon inflicting serious bodily injury, conspiracy to commit non-felonious breaking or entering, and non-felonious breaking or entering. His second attempt to pay someone for criminal conduct resulted in the defendant's conviction of two counts of solicitation to commit murder. The defendant has presented eight questions for our review. From a careful consideration of the record, we have found no prejudicial error.

In the early summer of 1982, the defendant was having "trouble" with his next door neighbor, George Koubek. The defendant offered David Morrison "$50.00 to go assault [Koubek] and teach him a lesson." At first, Morrison was not interested but on 25 June 1982, after being threatened by the defendant, he carried out the defendant's offer.

Morrison testified that he and Roger Lawson on the day of the attack rode their bicycles down to the defendant's house around 9:30 p.m. The defendant then sent Lawson over to Koubek's house twice to see who was home. When he returned, he saw Morrison wearing a toboggan that the defendant had given him to use as a mask. Lawson also saw the defendant give Morrison a knife. Then the three men left the defendant's house; Mor-

rison went to Koubek's house while Lawson and the defendant went around the block to wait for Morrison.

With the mask over his face Morrison went to Koubek's home and knocked on the door. According to Koubek's testimony, Morrison pointed the knife at him and said, "This is a stickup." Morrison slashed at Koubek with the knife and they began to fight. The sixty-nine-year-old Koubek was cut, struck in the mouth, and kicked in the face and ear by Morrison.

After the struggle, Morrison ran back over to the defendant's house. The defendant arrived shortly after Morrison, paid him an additional twenty-five dollars, and gave him a ride home.

Morrison was arrested and later convicted for attempted armed robbery. Lawson was also arrested and charged with conspiracy to assault inflicting serious bodily injury. He had not yet been tried at the time of Brown's trial. The defendant was originally indicted on charges of conspiracy to assault with a deadly weapon inflicting serious bodily harm, conspiracy to commit first-degree burglary, and first-degree burglary. He appeared in open court in response to these indictments on 1 November 1982. At this time, he signed a waiver of court-appointed counsel, expressing a desire to appear in his own behalf. No attorney had entered a general appearance on the defendant's behalf and there was no attorney of record on 4 or 5 November 1982. Yet, defense counsel, John Morrow, testifying under oath, stated that the defendant was initially charged in June of 1982 for these crimes, but that the case against him was dismissed at a probable cause hearing. Morrow stated that the defendant retained him as counsel at that time. Later when the Grand Jury returned indictments for these same offenses and the defendant was arrested on 28 September 1982, the defendant called Morrow who stated that he would continue to represent the defendant. Morrow further explained:

> I did, in fact, appear in court for his first appearance when he waived counsel. I did not make an official appearance in court, because I had not fully been retained, but I did consider myself his attorney.

* * * *

I never did file an appearance. I did file discovery papers in December.

Approximately one week prior to 4 November 1982 Detective R. A. Spillman was told by a paid police informant, Mark Spainhour, that he knew a man who wanted two people killed. Later, Spainhour revealed that the defendant wanted Morrison and a police detective, referred to as Carrot Top, murdered. With this knowledge, Spillman devised a plan to meet with the defendant and to record their conversation.

Posing as an ex-convict who would commit murder for hire, Spillman, through Spainhour who knew the defendant, met with the defendant on 4 November 1982 at his home. Spillman was wired with a transmitter for this and all subsequent conversations with the defendant. At this initial meeting, the defendant offered Spillman $2,500 if he would kill Carrot Top, the officer who the defendant believed was pushing the case against him in the attack on Koubek, and Morrison, the only witness against him who could testify to his part in the Koubek attack.

After one telephone call and another meeting, both of which were taped, they agreed that once Spillman killed Carrot Top he would show his body to the defendant. Morrison was to be killed shortly thereafter. On the evening of 5 November 1982, Spillman called the defendant to meet him at a particular parking lot so that he could show him Carrot Top's body. When the defendant arrived at the appointed place, Spillman showed him the body of Detective J. C. Douglas, who had been disguised to look as if he had been shot. Satisfied with Spillman's job, the defendant paid him $400 as a first installment and was immediately arrested by other officers waiting nearby. On 15 November 1982, the defendant was indicted on two counts of solicitation to commit murder. On 14 January 1983, the jury returned a verdict of guilty on all five counts charged against the defendant.

[1] The most troublesome of the defendant's assignments of error asserts that the taped conversations between Spillman and the defendant after the defendant had been indicted for the three crimes arising from the Koubek assault violated the defendant's Sixth Amendment right to the assistance of counsel made applicable to the States through the Fourteenth Amendment. *See Gideon v. Wainwright*, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed. 2d 799

(1963). As of the time his conversations were recorded on 4 and 5 November 1982, the defendant had already been indicted for crimes committed during the Koubek assault and had been before the trial court for his first appearance on 1 November 1982. Thus, with regard to these charges, the criminal proceedings against the defendant had reached a critical stage, thereby entitling him to counsel. *See Kirby v. Illinois*, 406 U.S. 682, 689, 92 S.Ct. 1877, 1882, 32 L.Ed. 2d 411, 417 (1972). However, the criminal proceedings started against the defendant at this time with regard to the crimes of solicitation were still within the investigatory stage, a period before the defendant's Sixth Amendment right to counsel attaches. Spillman, following through on a tip given by a reliable paid informant, recorded the defendant's conversations in an effort *to obtain* evidence against the defendant as to whether the defendant would indeed solicit another to commit murder. Technically, on this basis alone, we could hold that the defendant's Sixth Amendment right to counsel has not been violated by Spillman's investigatory activity.

Yet, because the five offenses were joined for trial and the tape recordings did contain incriminating statements deliberately elicited from the defendant by Spillman concerning the Koubek assault after he had been indicted and in the absence of counsel, we take a closer look at this assignment of error to insure that the defendant's Sixth Amendment right has not been infringed upon in violation of the rule laid down in *Massiah v. United States*, 377 U.S. 201, 206, 84 S.Ct. 1199, 1203, 12 L.Ed. 2d 246, 250 (1964).

"The rule of *Massiah* serves the salutory purpose of preventing police interference with the relationship between a suspect and his counsel once formal proceedings have been initiated." *United States v. Henry*, 447 U.S. 264, 276, 100 S.Ct. 2183, 2190, 65 L.Ed. 2d 115, 126 (1980) (Powell, J., concurring). Assuming arguendo that the defendant was entitled to counsel, the essential question then becomes whether the defendant actually retained counsel or whether he voluntarily, knowingly, and intelligently waived his right to the assistance of counsel. *See Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed. 2d 694, *rehearing denied*, 385 U.S. 890, 87 S.Ct. 11, 17 L.Ed. 2d 121 (1966). We hold that there has been no violation of the defendant's Sixth Amend-

ment rights because at the time of the Spillman undercover operation the defendant had validly waived his right to counsel.

During the *voir dire* proceeding to determine the admissibility of the defendant's conversations with Spillman, the prosecution introduced evidence which showed that on 1 November 1982, two days before the defendant's first conversation with Spillman and three days before he was arrested for solicitation to commit murder, the defendant had appeared in court without counsel on the charges in connection with the Koubek assault. At this time, the defendant signed a written waiver under oath, stating:

> I freely, voluntarily, and knowingly declare that I do not desire to have counsel assigned to assist me, that I expressly waive that right, and that in all respects, I desire to appear in my own behalf, which I understand I have the right to do.

John Morrow, attorney, testified that he was in the courtroom on 1 November 1982 during the defendant's first appearance "when [the defendant] waived counsel," but that he did not make an appearance on the defendant's behalf because he "had not been fully retained," and subsequently, "never did file an appearance."

In any event, the defendant had no right to appear both by counsel and by himself. *State v. House*, 295 N.C. 189, 244 S.E. 2d 654 (1978). The written waiver demonstrated his choice to appear in his own behalf. This waiver of counsel is good until the proceeding has finally terminated and the burden of showing a change in the desire of the defendant for counsel rests upon the defendant. *State v. Elliott*, 49 N.C. App. 141, 270 S.E. 2d 550 (1980).

The only other evidence pertaining to whether the defendant had counsel was made during the first recorded conversation by the defendant to Spillman. As the defendant tries to decide "who to go after," he states, "I've got, I think I've got an appointment Monday to talk to the lawyer on it, and I can find out what he, what he thinks about who's who in the thing." This evidence does not contradict the other evidence that he had waived counsel at this time. It is clear that he had no counsel as of 1 November 1982. He offered no evidence that he retained counsel by 4 or 5 November, the date of the relevant conversations. His statement at most only reflects the fact that he was planning to talk to an

attorney on 8 November 1982, not that he had retained him as counsel or intended to retain him at that time.

In relation to this assignment of error, the defendant also asserts that the trial court erred by failing to make the necessary findings of fact and conclusions of law in his order permitting the tapes to be admitted in evidence. We disagree. The trial court found as a fact that on 1 November 1982 the defendant had waived his right to court-appointed counsel and that as of 4 and 5 November there was no attorney of record. Since the defendant did not except to these findings which are supported by competent evidence, they are conclusive on appeal. *State v. Smith*, 278 N.C. 36, 178 S.E. 2d 597, *cert. denied*, 403 U.S. 934, 91 S.Ct. 2266, 29 L.Ed. 2d 715 (1971). The trial court's conclusion of law reflecting these findings stated that "[i]n obtaining the tape recorded conversations with the defendant, the police violated none of the constitutional rights of the defendant." In our review of the order, we have found that these findings of fact support this conclusion of law and hold that the trial court committed no error with regard to this order.

[2] The defendant further contends that the trial court committed reversible error by granting the State's motion to join the offenses for trial arising from the Koubek assault and the undercover solicitation to commit murder operation. G.S. 15A-926(a) provides that

> Two or more offenses may be joined in one pleading or for trial when the offenses, whether felonies or misdemeanors or both, are based on the same act or transaction or on a series of acts or transactions connected together or constituting parts of a single scheme or plan.

As a general rule, a motion to consolidate is addressed to the sound discretion of the trial court and his ruling will not be disturbed absent a showing of abuse of discretion. *State v. Davis*, 289 N.C. 500, 223 S.E. 2d 296, *death penalty vacated*, 429 U.S. 809, 97 S.Ct. 47, 50 L.Ed. 2d 69 (1976). However, "where there is a serious question of prejudice resulting from consolidation for trial of two or more offenses, the appropriate function of appellate review is to determine whether the case meets the statutory requirements." *State v. Wilson*, 57 N.C. App. 444, 448, 291 S.E. 2d 830, 832, *disc. rev. denied*, 306 N.C. 563, 294 S.E. 2d 375 (1982).

Case law construing the statute requires that "[i]n determining whether defendant has been prejudiced, the question posed is whether the offenses are so separate in time and place and so distinct in circumstances as to render a consolidation unjust and prejudicial to an accused." *State v. Clark*, 301 N.C. 176, 181, 270 S.E. 2d 425, 428 (1980). Therefore, "there must be some type of 'transactional connection' between the offenses before they may be consolidated for trial." *State v. Oxendine*, 303 N.C. 235, 240, 278 S.E. 2d 200, 203 (1981).

We believe the trial court's ruling was proper because there was a transactional connection between the five offenses which were not so distinct in circumstances so as to render consolidation unjust and prejudicial. The present consolidation is not a case where several separate offenses committed independent from one another have been joined, but rather is a situation where the second group of offenses were committed by the defendant as a result of and were dependent on the commission of the earlier assault-related offenses. Also, evidence of the assault-related offenses would have been admissible in the trial of the solicitation to commit murder offenses. *See State v. McClain*, 240 N.C. 171, 81 S.E. 2d 364 (1954).

The defendant hired someone on 25 June 1982 to assault his neighbor; and when he was connected with that incident and to its related crimes, he hired another person on 4 November 1982 to kill those people who would play key roles in the prosecution against him in the assault. Although remoteness in time between offenses may often be a reason to deny a motion to consolidate, we do not believe that under these facts such a denial is warranted. There is no requirement that the "single scheme or plan" element of G.S. 15A-926(a) exists from the outset of the defendant's criminal activity. *See State v. Williams*, 308 N.C. 339, 302 S.E. 2d 441 (1983). Because the second group of crimes grew out of the earlier transaction, this causal relationship gives rise to the necessary "transactional connection" between the offenses. Furthermore, since there was no violation of the defendant's Sixth Amendment right to counsel when Spillman recorded his conversations with the defendant, we fail to see how the defendant has been prejudiced. We hold, therefore, that the trial court did not abuse his discretion by granting the State's motion to consolidate.

[3]   As a third assignment of error, the defendant contends that the trial court committed prejudicial error in allowing evidence to be presented that Morrison, an alleged co-conspirator, had been convicted by a jury of a crime committed as a part of the conspiracy. "The clear rule is that neither a conviction, nor a guilty plea, nor a plea of *nolo contendere* by one defendant is competent as evidence of the guilt of a codefendant on the same charges." *State v. Campbell,* 296 N.C. 394, 399, 250 S.E. 2d 228, 230 (1979). The rationale for this "clear rule" is that (1) "a defendant's guilt must be determined solely on the basis of the evidence presented *against him*" and (2) "introduction of such . . . by a co-defendant, *when he or she has not testified at defendant's trial,* would also deprive the defendant of his constitutional right of confrontation and cross-examination." *State v. Rothwell,* 308 N.C. 782, 785-86, 303 S.E. 2d 798, 801 (1983). However, the Supreme Court in *Rothwell* realized that neither of these bases for the rule would be violated "if evidence of a *testifying* co-defendant's . . . [guilt] . . . is introduced for a *legitimate* purpose." *Id.* In *Rothwell,* the plea information was elicited from the witness on direct examination. Therefore, the court indicated that this testimony "was erroneously admitted into evidence because a legitimate purpose had not yet been established for its introduction at trial," such as rebuilding the witness's credibility which had been attacked on cross-examination. *Id.* at 787, 303 S.E. 2d at 801-802. In the present case, the admission into evidence, also on direct examination, that Morrison had been convicted of attempted armed robbery was equally erroneous for we fail to see any legitimate purpose for which it was offered by the prosecution.

However, in the present case just as in *Rothwell,* since the codefendant was in fact on the witness stand and had "testified to his own participation in the crime, '[t]he jury was already fully apprized of [the testifying witness'] guilt.' " *Id.* at 788, 303 S.E. 2d at 802, *quoting, State v. Bryant,* 236 N.C. 745, 747, 73 S.E. 2d 791, 792 (1953). Therefore, we hold that the erroneous admission into evidence of Morrison's conviction was error but not prejudicial error, requiring a new trial.

[4]   The defendant also assigns as error the admission into evidence a statement made by Mark Spainhour, a paid informant, to Detective Spillman concerning his knowledge of the defendant's desire to have Carrot Top and Morrison killed. In his brief,

the defendant now contends that all of the statements made by Spainhour which were recorded as a part of the taped conversations with the defendant were improperly admitted before the jury. Specifically, the defendant asserts that because Spainhour did not testify at trial the Confrontation Clause of the Sixth Amendment has been violated. We disagree.

[5] "It has been noted that the Confrontation Clause and the hearsay rule 'stem from the same roots' and are 'designed to protect similar values.'" *State v. Porter*, 303 N.C. 680, 696, 281 S.E. 2d 377, 388 (1981), *quoting Dutton v. Evans*, 400 U.S. 74, 81, 86, 91 S.Ct. 210, 216, 219, 27 L.Ed. 2d 213, 223, 225 (1970). Thus, statements which do not run afoul of the hearsay rule may be admitted against the defendant without violating the Confrontation Clause. *See State v. Porter, id.* at 696, 281 S.E. 2d at 388; *see also State v. Hardy*, 293 N.C. 105, 235 S.E. 2d 828 (1977). It is clear from the record that all of Spainhour's statements were not offered as substantive evidence. The trial judge instructed the jury twice that "if you find that Spainhour made the statements, you may consider those statements only insofar as you may find that it bears upon the state of mind of the hearer of the statement and explains their later conduct." Thus, the trial court made it clear to the jury that no statement uttered by Spainhour was to be used to prove the truth of the matter in question. Since statements offered for any purpose other than proving the truth of the matter asserted are not objectionable as hearsay, they likewise do not violate the Confrontation Clause. The purpose for admitting Spainhour's statement that he "knew a guy that wanted a couple people killed" was to show its effect upon Spillman and to explain why Spillman instigated the undercover operation. Such a statement, offered to explain the subsequent conduct of the person to whom the statement was made, is admissible. *State v. Potter*, 295 N.C. 126, 244 S.E. 2d 397 (1978); *State v. Irick*, 291 N.C. 480, 231 S.E. 2d 833 (1977). Similarly, the statements made by Spainhour which were recorded during Spillman's first conversation with the defendant were also admissible. In *State v. Poplin*, 56 N.C. App. 304, 289 S.E. 2d 124, *disc. rev. denied*, 305 N.C. 763, 292 S.E. 2d 579 (1982), this Court stated that it was not error for the trial court to allow an undercover agent to testify to a conversation he had with a man he had just met in the defendant's house when the two of them left the

presence of the defendant to retrieve a package of cocaine from a
birdhouse on a utility pole in the defendant's backyard. The Court
held that "this was properly admissible as testimony accompany-
ing and characterizing an act." *Id.* at 309, 289 S.E. 2d at 128.
Thus, the conversation was a part of the "res gestae" or "things
done." Likewise, in the present case, Spainhour's role in the
undercover operation was a part of the operative conduct itself
by providing the defendant an opportunity to solicit Spillman to
commit murder. Spainhour's statements on the tape played before
the jury were not offered for the truth of any statement made
and so were received into evidence for a non-hearsay purpose.
*See* 1 Brandis on North Carolina Evidence § 158-159 (1982). The
trial judge correctly instructed the jury that these statements
were not to be considered as substantive evidence, but only in
regard to how they might affect the state of mind of the defend-
ant, the hearer of the statements. Therefore, we hold that since
each of Spainhour's statements were admissible for a non-hearsay
purpose there was no violation of the Confrontation Clause of the
Sixth Amendment.

However, the discussion does not end there. The United
States Supreme Court held in *Ohio v. Roberts,* 448 U.S. 56, 100
S.Ct. 2531, 65 L.Ed. 2d 597 (1980), that "merely classifying a state-
ment as a hearsay exception [or as in this case simply not hear-
say] does not *automatically* satisfy the requirements of the Sixth
Amendment and that hearsay testimony is admissible against the
accused, without violating his right of confrontation, only when it
bears adequate 'indicia of reliability' to guarantee its trustworthi-
ness." *State v. Porter, supra,* at 697, 281 S.E. 2d at 388. With
regard to the Spainhour statement that the defendant wanted
people killed, Detective Spillman testified during the *voir dire* ex-
amination of the tapes that he had known Spainhour for six years,
that he had used him as an informant in excess of a hundred
times, and that he had always found him truthful, reliable and ac-
curate. Moreover, Spillman, through his undercover operation
discovered that what Spainhour had told him was in fact true that
the defendant did indeed want two people killed. Additionally, the
statements made during the taped conversation were also trust-
worthy. Detective K. E. Peele testified that the recording equip-
ment was working properly; that entire statements made were
recorded; that no changes, deletions or additions were made on

the recordings; and that since the time the recordings were made, they have been in his possession under police property control. We hold that these statements, having met the additional *Ohio v. Roberts* criteria as bearing adequate indicia of reliability to guarantee trustworthiness, were properly admitted.

[6] The defendant's assignment of error that the trial court committed prejudicial error in overruling the defendant's motions for dismissal at the end of all the evidence and at the end of the jury charge is without merit. He contends "no evidence ever existed sufficient to permit a jury to find an agreement to use a deadly weapon to satisfy the felony conspiracy charge and conviction." Yet, Roger Dale Lawson, present at the defendant's home with Morrison on the night of the assault on Koubek testified that "[w]hen they were coming through the hall, I glanced back and saw Brown hand Morrison a knife." Therefore, we hold there was sufficient evidence before the jury to allow them to find the defendant guilty of conspiracy to assault with a deadly weapon inflicting serious bodily injury.

[7] The defendant's final assignments of error allege error in the sentencing stage of the defendant's trial. He first contends that G.S. 15A-1340.4(a)(2)l., as a mitigating factor, [that the defendant voluntarily acknowledged to a law enforcement officer prior to arrest or at an early stage of the criminal process] violates the defendant's rights under the Fifth and Sixth Amendments by compelling the defendant to testify against himself without the assistance of counsel. The purpose of this factor is to allow the defendant to benefit from any remorse he may have shown for his wrongdoing. *State v. Ahearn*, 307 N.C. 584, 300 S.E. 2d 689 (1983). In the present case, the trial court did not consider this factor because there was no evidence that the defendant acknowledged his wrongdoing prior to arrest or at an early stage of the criminal process. Thus, we hold the defendant does not have standing to assert that the use of this mitigating factor and its presence within the statute is unconstitutional. A person to whom a statute may constitutionally be applied will not be heard to challenge that statute on the ground that it may conceivably be applied unconstitutionally to others, in other situations not before the Court. *Murphy v. Hunt*, 455 U.S. 478, 102 S.Ct. 1181, 71 L.Ed. 2d 353 (1982).

[8]    Secondly, the defendant asserts that the trial court committed error in the sentencing phase of his trial by impermissibly using the same evidence to prove more than one aggravating factor. *See* G.S. 15A-1340.4(a)(1). In the sentencing of the first solicitation to commit murder, the trial court found factors in aggravation that "[t]he offense was committed to disrupt or hinder the lawful exercise of any governmental function or the enforcement of laws" (*see* G.S. 15A-1340.4(a)(1)d.) and that the intended victim of the murder was a Winston-Salem Fire Department arson investigator. (*See* G.S. 15A-1340.4(a)(1)e.) In the second solicitation conviction, the trial judge found that the offense was committed "to disrupt or hinder . . . the enforcement of the law" and that the intended victim, David Morrison, was a State's witness against the defendant. He argues that in both solicitation charges that the same evidence was used to prove both aggravating factors. For example, by soliciting the murder of a State's witness, the defendant naturally attempted to hinder the enforcement of the law.

G.S. 15A-1340.4(a)(1) states that "the same item of evidence may not be used to prove more than one factor in aggravation." We do not believe that the "same item of evidence" has been used within the meaning of the statute. The evidence shows that the defendant attempted to disrupt the enforcement of the laws through the act of paying someone to murder those people who were playing key roles in his assault prosecution. The defendant testified that "I didn't care at that time that human life, human blood, was going to be spilled and two people were going to be dead." He simply did not want to be prosecuted and possibly sent to jail for his part in the assault on Koubek. Other evidence shows that the only way the defendant was going to achieve that end was by killing the detective and Morrison, the man he had paid to commit the assault who would testify against him at trial. The purpose of G.S. 15A-1340.4(a)(1)e. is to penalize a defendant who chooses to commit an offense against this class of people: law enforcement officer, fireman, judge, prosecutor, juror, or witness against the defendant while performing his official duties. In both instances of solicitation, the defendant directed his criminal activity against a person in this class, specifically a detective and a State's witness. Therefore, the trial court correctly found this factor in aggravation. Additionally, the specific crime of murder

(rather than, for instance, robbery or burglary) he wanted committed against these particular people was intended to hinder the enforcement of laws by disrupting the assault prosecution against him. The defendant cannot be allowed to benefit by having only one aggravating factor charged against him instead of two simply because the method in which he chose to disrupt the enforcement of the law included killing two members of this statutorily protected class. We hold that the trial court committed no error within the sentencing phase and that the defendant is not entitled to a new sentencing hearing.

No error.

Judges WELLS and PHILLIPS concur.